Lawrence **MAHON**, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (EXPERT WINDOW CLEANING AND STATE WORKERS' INSURANCE FUND), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2003.
Decided Nov. 10, 2003.

Richard S. Belkin, Pittsburgh, for petitioner.

Brian D. Walters, Pittsburgh, for respondents.

BEFORE: COLINS, President Judge, McGINLEY, Judge SMITH-RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Lawrence Mahon (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting the petition to review compensation benefits filed by Expert Window Cleaning (Employer) and the State Workers' Insurance Fund (SWIF), employer's workers' compensation insurer.

The facts as found by the WCJ are summarized as follows. Claimant, a window washer, arrived at a work site on July 16, 1999, at approximately 9:30 a.m., and set up two fifteen-foot ladders in front of the site, by resting them against the trim of a window on the second floor of the building. According to Claimant's testimony he was cleaning a second-story window when the ladder upon which he stood tilted

to the right and he fell approximately eighteen feet. Finding of Fact No. 6. The fall caused Claimant to break his right and left ankles. Finding of Fact No. 1.

Claimant went to the hospital to be treated, at which time he reported to the hospital that he had a history of being an alcoholic and consuming two six-packs per day, and that he had consumed two beers at 8:00 in the morning before his injury occurred. The hospital performed blood chemistry tests, which indicated that Claimant's ethanol level at 11:32 a.m., equaled 238 milligrams per deciliter.[1] Finding of Fact No. 4.

SWIF issued a notice of compensation payable on July 26, 1999, ten days after Claimant's injury occurred, that acknowledged Claimant's injuries as work-related, and Claimant began to receive weekly worker's compensation benefits of $135.00, based on his average weekly wage of $150.00. SWIF filed its petition to review compensation benefits on September 7, 1999, seeking to set aside the notice of compensation payable because SWIF had learned that Claimant had had alcohol in his system at the time of his injury, and believed that intoxication was the actual cause of his fall and injuries. Finding of Fact No. 2.

SWIF offered the testimony of Maureen Zingerman, who stated that she obtained a statement from Claimant on July 22, 1999, in which he never indicated that he might have been intoxicated at the time of his fall. Ms. Zingerman also testified that, at the time SWIF accepted the injury, she had no records that indicated that Claimant might have been intoxicated at the time of his fall. She noted that the Worker's Compensation Act,[2] obligates SWIF to either accept or reject a worker's claim within twenty days of the injury. Finding of Fact No. 8.

SWIF also submitted the deposition testimony of John Shane, M.D., a board-certified physician in both clinical and anatomical pathology as well as clinical toxicology. Finding of Fact No. 10. Dr. Shane reviewed the blood chemistry test performed at the hospital on July 16, 1999, as well as Claimant's testimony concerning his fall. Finding of Fact No. 11. The WCJ noted Dr. Shane's opinion that, based on the timing of the blood chemistry test, and Claimant's height and weight, and the time of his fall, Claimant had the equivalent of thirteen one-ounce shots of whiskey or thirteen twelve-ounce beers in his blood, and was substantially impaired. Finding of Fact No. 12.

Dr. Shane also testified that, based on that degree of impairment, Claimant would have also experienced frontal lobe release, which causes a loss of the sense of causation, severely affecting a person's judgment and concern for personal safety. Finally, Dr. Shane opined that, if Claimant had not consumed as much alcohol as he did, he would not have fallen. Finding of Fact No. 13.

In addition to his own testimony, Claimant presented the testimony of a co-work-

---

1. We note that the WCJ did not make a factual finding regarding the blood-alcohol by weight equivalent (the number typically used in driving under the influence statutes) of Claimant's ethanol level. However, Dr. John Shane, M.D., SWIF's medical expert, testified that, at the time of Claimant's accident his blood-alcohol level was between .25 and .3. Notes of Testimony, pp. 31–32, 45. This figure places his blood-alcohol level at approxi-

mately three times the recently reduced legal limit of .08 for driving. See Act 24 of 2003, Act of September 30, 2003, P.L. ——.

2. Act of June 2, 1915, P.L. 736, *as amended.* The specific section of the Act requiring employers to either accept or deny liability is Section 406.1, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1.

er, Kenneth Pierce, who stated that Claimant did not appear to him to be intoxicated or to have even consumed alcohol on July 16, 1999. Claimant also presented the testimony of his Employer, Mr. Panza, who similarly testified that he had no reason to believe that Claimant had been drinking before work on July 16. Mr. Panza also testified that he was contacted by SWIF on July 20, 1999, concerning Claimant's accident and did not report to SWIF that he thought Claimant had been drinking. Finding of Fact No. 16.

The WCJ found SWIF's witnesses to be credible. She found Claimant's testimony credible in part, to the extent that he admitted his history of alcoholism, his habit of drinking two six-packs per day, and that he had consumed beer before beginning work. However, she did not find his testimony that he had only two beers before work credible. The WCJ also found Mr. Pierce's testimony credible, but she noted that his testimony was questionable, because Claimant himself admitted to having had consumed some beer before work. With regard to Mr. Panza, the WCJ accepted his testimony only to the extent that he testified that he never provided information to SWIF indicating that Claimant was intoxicated. Finding of Fact No. 18.

The WCJ noted Section 301(a) of the Act, 77 P.S. § 431, which provides that "[i]n cases where the injury ... is caused by intoxication, no compensation shall be paid if the injury ... would not have occurred but for the employe's intoxication, but the burden of proof of such fact shall be upon the employer." The WCJ thereby concluded that, because Claimant's intoxication was the cause of his injuries, he was not entitled to workers' compensation benefits. The WCJ then relied upon Section 413 of the Act, 77 P.S. § 771, which allows a WCJ to correct a notice of compensation payable if the notice is materially incorrect.

Claimant appealed the WCJ's decision to the Board, which affirmed. As before the Board, Claimant here raises the following issues: (1) Whether SWIF was precluded from collaterally attacking the notice of compensation payable, because it could have avoided admitting liability initially by issuing a temporary notice of compensation payable; and (2) Whether SWIF failed to carry its burden of proof to establish that intoxication caused Claimant's fall because, Claimant argues, the testimony of SWIF's medical expert supports only a finding that there is a statistical likelihood that Claimant fell because of intoxication, rather than a finding that intoxication was the definitive cause of Claimant's fall.

Claimant first argues that the WCJ should have concluded that SWIF may not collaterally attack the admission of liability in the notice of compensation payable because (1) SWIF could have taken an additional ten days to investigate the accident before accepting liability, and (2) SWIF could have issued a temporary notice of compensation payable, which would have allowed SWIF ninety days to investigate the accident.

Claimant relies upon the Pennsylvania Supreme Court's decision in *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983), in asserting that SWIF may not challenge the notice of compensation payable. In that case, the Court held that, because "[employer] had an opportunity to, and in fact did, investigate the cause of [claimant's] disability, the notice of compensation payable it filed constitutes an admission of its liability to [claimant]." *Id.*, 502 Pa. at 183, 465 A.2d at 971. Claimant acknowledges the Supreme Court's subsequent decision in *Barna v. Workmen's Compensation Appeal Board*

*(Jones & Laughlin Steel Corp.)*, 513 Pa. 518, 522 A.2d 22 (1987), in which the Court held that an Employer could seek to challenge an initial admission of liability in a notice of compensation payable where the employer begins prompt payment of benefits before completing an investigation of an alleged work-related injury, and upon completion of the investigation determines that the employee is not entitled to benefits.

Claimant relies also upon this Court's decision in *County of Schuylkill v. Workmen's Compensation Appeal Board (Lawlor)*, 151 Pa.Cmwlth.97, 617 A.2d 46 (1992). In *County of Schuylkill*, this Court affirmed a Board decision reversing a WCJ's order to set aside a notice of compensation payable. The WCJ had set aside the notice of compensation payable, concluding that an investigation performed after the Employer issued the notice of compensation payable showed that the claimant did not sustain a work-related injury. The claimant appealed to the Board, which, relying on *Barna*, reversed the WCJ. The Board "determined that the Employer had an opportunity to investigate the claim, did so, and nothing in the record indicated that the Employer or its insurer was precluded from further investigation of the claim, or that they were misled or deceived by the Claimant in any respect." *Id.* at 47.

Claimant argues that the legislature likely amended the Act to allow for temporary notices of compensation payable in order to allow employers an initial opportunity to provide compensation to an injured employee while investigating an alleged injury. Although that suggestion may be true, that amendment did not specifically eliminate a party's right to seek to amend a notice of compensation payable when a material mistake appears on the notice of compensation payable. If the legislature had intended that to be the

case, it would have eliminated or modified Section 413 of the Act.

Section 406.1(d)(1) of the Act, 77 P.S. § 717.1(d)(1), provides as follows: "In any instance where an employer is **uncertain** whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable as prescribed by the department." (Emphasis added.) That language suggests that a notice of temporary compensation payable is warranted only when an employer is "uncertain" as to the compensability of the injury and the extent of liability. An employer, or insurer, faced with facts that, on their face, indicate that an injury is compensable, would not be "uncertain" as to whether the injury is compensable. In situations where an injury reasonably appears to be the direct result of a work accident, and no apparent exclusions apply, as in the present case, an employer or insurer acts reasonably in assuming that there is no uncertainty as to cause and effect.

The thrust of Claimant's argument is the contention that, **if** SWIF was continuing an investigation of Claimant's fall at the time it issued the notice of compensation payable, SWIF must necessarily have been **uncertain** about the legitimacy of Claimant's claim petition, in which case issuing a notice of temporary compensation payable was the appropriate course. If on the other hand, SWIF was not uncertain about the claim, it could not have been anticipating the commencement of an investigation into Claimant's injury, and hence, *Beissel* and *County of Schuylkill* would preclude an attack on the notice of compensation payable.

SWIF acknowledged that, at the time it issued the notice of compensation payable,

it believed that there was no question concerning the compensability of Claimant's injury. Such being the case, SWIF acted reasonably in this case by proceeding to issue a notice of compensation payable without first having received Claimant's hospital records and by not issuing a notice of temporary compensation payable.

 Thus, the question remains whether SWIF, which did not receive the records until after it issued the notice of compensation payable, is barred by the cases upon which Claimant relies in seeking to retract the admission in the notice of compensation payable. We conclude that the WCJ and Board reached the correct conclusion. We believe that an insurer may have an initial belief as to the right of a claimant to benefits, thus supporting a decision not to issue a notice of temporary compensation payable, and then, consistent with Section 413 of the Act, challenge the notice of compensation payable because of information received after that issuance.

As noted by SWIF in its brief, this conclusion is supported by the Supreme Court's recent decision in *Waugh v. Workmen's Compensation Appeal Board (Blue Grass Steel)*, 558 Pa. 400, 737 A.2d 733 (1999), wherein the Court stated: "[A] court must be mindful that the Workers' Compensation Act imposes a duty upon the employer and insurer to promptly commence payment of benefits and that this duty sometimes may leave the employer and insurer unaware of the cause of injury or the facts surrounding the claim." 558 Pa. at 405, 737 A.2d at 736.

Claimant argues that, if SWIF acted reasonably in deciding not to issue a notice of temporary compensation payable, *County of Schuylkill* is controlling, because SWIF here could have pursued an investigation before the expiration of the twenty-one day period in which it was required to act under Section 406.1(a), 77 P.S. § 717.1(a), before issuing the notice of compensation payable, using that time to investigate Claimant's injury. However, *County of Schuylkill* is factually distinct. The Court stated therein:

> [T]he fact that there were no medical records in Claimant's file at the time the Notice of Compensation Payable was issued is not sufficient justification for finding that the insurer had not completed its investigation, because the insurer had the opportunity to have Claimant's file forwarded from Dr. Platt's office and failed to do so. According to the record, the claims examiner testified that he was unclear as to whether Claimant was ever requested to provide authorization for the release of his medical records from Dr. Platt's office.... The claims examiner's testimony indicates that no effort was made to ensure that Claimant's authorization was received so Dr. Platt's office could forward his medical files. Moreover, no effort was made to have Claimant independently examined.

*County of Schuylkill*, 617 A.2d at 47–48.

The Court apparently found significant the fact that the employer had never sought to have Claimant sign release forms in order to obtain the claimant's medical records. Additionally, a significant amount of time had passed before the employer obtained the documents. Unlike *County of Schuylkill*, we are not addressing the question of whether SWIF had completed its investigation before issuing the notice of compensation payable. The sole issue is whether information obtained after SWIF's **issuance** of the notice of compensation payable may be used in considering SWIF's petition to review compensation benefits. In this case SWIF acted promptly once it received Claimant's records—less than two months had elapsed between the date SWIF issued the notice of compensation payable on July 26,

1999, and the date when SWIF filed its petition to review compensation payable on September 7, 1999. Accordingly, we conclude that *County of Schuylkill* does not control the outcome in this case.

Further, in *Barna,* the Court stated definitively that, when "an employer promptly commences payment of compensation prior to **commencement or completion** of investigation into the cause of the claimant's injuries and later determines that the claimant's disability was never work-related, in the absence of evidence of repeated contests of the cause of the disability such as occurred in *Beissel,* the employer must be permitted to seek relief." *Barna,* 513 Pa. at 523, 522 A.2d at 24.

■ Finally, Claimant seeks to distinguish this Court's decision in *Sunset Golf Course v. Workmen's Compensation Appeal Board (Department of Public Welfare),* 141 Pa.Cmwlth.103, 595 A.2d 213 (1991), *petition for allowance of appeal denied,* 529 Pa. 654, 602 A.2d 863 (1992), which involved only a material mistake as to the identity of the claimant's employer. However, regardless of whether a mistake concerns the identity of an employer or the true nature of an injury, either type of mistake may subject an original notice of compensation payable to correction. Of course, any alleged material mistake must have been present at the time the notice of compensation payable was issued. *Waugh.* That is the case here.

As suggested above, a notice of temporary compensation payable may be an appropriate method of complying with the Act when an employer is uncertain as to whether an injury is work related. However, the Supreme Court's decision in *Barna,* and its progeny, allow for correction of material mistakes when an employer or insurer, in good faith, initially issues a notice of compensation payable, but upon completion of an investigation learns that facts previously unknown indicate that the injury is not work related or is otherwise not compensable. Accordingly, we reject Claimant's argument that SWIF is estopped from challenging the injury designated on the notice of compensation payable.

Claimant also argues that, even if SWIF is permitted to challenge the notice of compensation payable, the Board erred in concluding that evidence of Claimant's consumption of alcohol, specifically the testimony of SWIF's expert concerning the degree of his impairment, support, as a matter of law, the WCJ's conclusion that Claimant is not entitled to compensation benefits because he would not have injured himself but for his state of intoxication.

As noted above, Section 301(a) of the Act provides that "[i]n cases where the injury ... is caused by intoxication, no compensation shall be paid if the injury ... would not have occurred but for employe's intoxication, but the burden of proof of such fact shall be upon the employer."

In this case, SWIF offered the testimony of Dr. Shane. Claimant asserts that Dr. Shane's testimony is insufficient to support the WCJ's conclusion that Claimant would not have sustained his injuries but for his intoxication. Claimant characterizes Dr. Shane's testimony as suggesting merely a statistical likelihood that he would not have fallen but for his intoxication. Claimant asserts that, in reviewing Dr. Shane's testimony as a whole, that evidence does not support the WCJ's determination. Claimant points to the following testimony in support of his argument:

Q. People do fall off ladders without ever drinking anything, right?

A. I believe they do, yes.

Q. Again, I assume that Mr. Mahon did get up and down the ladder, got up five times and got down five times, how do you know he wouldn't have fallen if he had nothing to drink?

A. Well, you just don't know. However, we do know and the best corollary is the motor vehicle circumstance, that sober people do have car accidents; but we know that at a blood alcohol level of .12, which is less than half of [claimant's], the seat mile accident rate is over 100 times that of the sober person. The same applies. Yes sober people have accidents, but your seat mile chance of having an accident is 100 times if you have an alcohol level of .12 percent which is less than half of what his alcohol was.

Q. Which allows you to say on a statistical basis that some of the accidents in any particular group of intoxicated people will be caused by the intoxication but you don't know that for any one particular individual?

A. Well, you do know if the individual has a blood alcohol of .3 and runs into someone that it is alcohol related until proven otherwise.

Q. Right, because people who aren't intoxicated don't just run into somebody?

A. Right.

Q. But people who weren't intoxicated do fall off ladders?

A. Right, again the same thing. It is a matter of what is your likelihood of that happening if you are sober versus the likelihood of it happening——yes, people who are sober have automobile accidents. People who are drunk have automobile accidents at a rate of 100 times the rate per seat mile of individuals who are sober. Those statistics are based on individuals with a blood alcohol

of .12 which is, again, less than half of Mr. Mahon.

Shane Deposition, pp. 57–59. Thus, Claimant argues that, although Dr. Shane's testimony establishes that Claimant's intoxication made it more likely that he would fall off a ladder, his testimony does not establish that Claimant would not have fallen off the ladder but for his intoxication.

In considering Claimant's argument, we address a question of first impression and must determine what the General Assembly meant by requiring employers, or insurers as here, to prove that a claimant would not have sustained an injury "but for" his intoxication. Clearly, that language refers to proof of some type of cause and effect between a claimant's intoxication and injury.

■■ The expression "but for" is not unknown in the law. In fact, "but for" causation is well known in the area of tort or negligence law. In Pennsylvania, courts have required plaintiffs to establish both the cause in fact of an injury and the legal or proximate cause of injury in order for a plaintiff to be entitled to damages. The term "but for" has been used in analyzing whether or not a particular act constitutes a cause in fact, rather than the legal or proximate cause of an injury. *See Smith v. Philadelphia Transportation Co.,* 202 Pa.Super. 278, 195 A.2d 168, 170 (1963). As noted in 2 Summary of Pennsylvania Jurisprudence 2d, § 20.92, the standard for legal causation is not the "but for" test applied to determine if a cause is a cause in fact, but the "substantial factor" test. In Pennsylvania negligence actions, a plaintiff bears the burden of proving cause in fact by establishing that his injuries would not have been sustained had the defendant not been negligent. The use by the General Assembly of the term "but for" strongly suggests that it intended that

employers or insurers seeking to defend a claim for workers compensation benefits must establish that the intoxication of an employee was the cause in fact of his injury.

■ By using the phrase "but for" we believe the General Assembly meant that an employer or insurer claiming an employee's intoxication as an affirmative defense under Section 301(a), must meet a burden similar to a plaintiff's in a negligence action by establishing that intoxication was the cause in fact of an injury, without regard to proof that the intoxication was the proximate cause of or a substantial factor in causing the injury.

■ The question of whether an act is the "cause in fact" of an injury is one for the fact finder in negligence cases. As fact finder in workers' compensation cases, the WCJ reviews the testimony presented and determines the weight and credibility to be assigned to each witness's statements. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

■ Because we conclude here that the term "but for" as used in Section 301(a) has a similar meaning and effect of the term as used in negligence actions, we can say that SWIF's sole burden was to convince the fact finder, by competent and substantial evidence that Claimant would not have fallen and sustained his injuries had he not been intoxicated. The WCJ here found the testimony of SWIF's expert credible and convincing. Dr. Shane testified, within a reasonable degree of medical certainty, that Claimant's state of intoxication caused his fall. Dr. Shane expressed a clear and decisive opinion as to the cause of Claimant's fall, as indicated below:

Q. Doctor, I would like to ask you some opinions within a reasonable de-gree of medical certainty, so if you could please give your answers according to that standard. First, I would like to ask you, do you have an opinion as to whether this accident that was described in the records, falling off a ladder, would have occurred had Mr. Mahon not had this amount of alcohol in his body?

A. Yes, I have an opinion.

Q. What is that opinion?

A. That opinion is that this accident would not have occurred. Whether it is safety operating a motor vehicle or safety on a ladder, an individual who is this overwhelmingly heavily intoxicated by alcohol does not have the coordinative skills, does not have the motor skills, does not have the judgmental skills, does not have the hearing and visual skills to operate a motor vehicle and he doesn't have the skills to ambulate safely on foot. He certainly doesn't have the skills to ascend or descend a ladder.

Shane Deposition, pp. 33–34.

■ We are mindful here of our standard of review, which limits us to considering whether any error of law has been committed, whether constitutional rights have been violated, and whether substantial evidence supports the WCJ's factual determinations. 2 Pa.C.S. § 704. "On appeal from a decision of the Board, the reviewing court must view the evidence in the light most favorable to the prevailing party below, including the benefit of all inferences reasonably deduced from the evidence." *Lehigh County Vo–Tech v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 329, 652 A.2d 797, 800 (1995). In light of the discredited testimony of Claimant concerning his belief as to the cause of his fall, Claimant's admission that he had consumed some alcoholic beverages before work, and Dr. Shane's credible testimony as to the degree and effect of Claimant's blood alcohol level at the

time of his fall, we may reasonably infer that Claimant's intoxication was the cause in fact of his fall.

In Claimant's view, SWIF is required to show not only evidence of intoxication, but also to establish the existence of negative facts that no other condition was the cause of Claimant's fall. However, because of our conclusion above, that SWIF needed only to prove that Claimant would not have fallen if he had not been intoxicated, we reject Claimant's argument. In ascertaining burdens of proof, and the shifting of those burdens, courts have held that, when the nonexistence of a negative fact can be established by one party more easily than another, the burden may lie on the party more able to prove the negative fact. *Thomas v. Allegheny & Eastern Coal Co.,* 309 Pa.Super. 333, 455 A.2d 637, 639 (1982). Additionally, when a particular party is more likely to have information that is probative of a particular issue, that party may bear the burden of coming forth with such evidence. *Skeen v. Stanley Co. of America,* 362 Pa. 174, 66 A.2d 774 (1949).

We conclude that it would be a fundamentally unfair burden on SWIF to require it to establish the nonexistence of all possible alternative causes of Claimant's fall from the ladder. Claimant, having personal knowledge of the conditions surrounding his fall was in the best position to put forth evidence of another cause of his fall, once SWIF offered credible, competent evidence that intoxication was the definitive cause of Claimant's fall. Claimant did testify concerning the cause of his fall; however, the WCJ did not find his testimony credible in that regard.

SWIF offered evidence that Claimant was intoxicated at the time of his fall. In the absence of credible evidence of an alternative reason for Claimant's fall, and in light of the WCJ's acceptance of the competent testimony of Dr. Shane, and his unequivocal opinion that Claimant would not have fallen had he not been so extremely impaired, we believe SWIF has satisfied its burden of proof. The WCJ reasonably inferred, from the Claimant's own testimony that he had been drinking the morning of his injury and Dr. Shane's testimony concerning the toxicology reports and hospital reports of Claimant's condition, that Claimant's intoxication caused his fall.

This court is well aware that alcoholism is a devastating and destructive disease; however, we cannot eviscerate the legislative intent of Section 301(a) of the Act. To rule otherwise would be to require the employers and taxpayers of the Commonwealth to become facilitators and enablers of the destructive effects of alcoholism on the workforce.

Accordingly, we affirm the decision of the Board.

### ORDER

AND NOW, this 10th day of November 2003, the order of the Workers' Compensation Appeal Board is affirmed.

### DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's decision because an employer cannot amend a Notice of Compensation Payable (NCP) solely on the basis of information it receives subsequently that the claimant's injury was not work-related when it could have obtained that very information prior to issuing the NCP. While I realize we do not have a sympathetic Claimant in this case, for the same reason there are statutes of limitations/repose and notice requirements that preclude valid claims because of the need for finality, once the employer issues an NCP, absent fraud and

the like, that should make the employer's acceptance of the injury also final.

In this case, Lawrence Mahon (Claimant), who worked as a window washer, was injured at 9:30 a.m. on July 16, 1999, after a ladder he was standing on fell approximately 18 feet to the ground, causing both his ankles to break. He went to the hospital for treatment at which time he admitted to hospital personnel that he had a history of being an alcoholic and consuming two six-packs per day, and that he had consumed two beers that morning at 8:00 a.m. prior to coming to work. The hospital performed blood tests which indicated Claimant's ethanol level at 11:32 a.m. equaled 238 milligrams per deciliter or between a .25 and .3 blood alcohol level.

Expert Window Cleaning's (Employer) insurance carrier, State Workers' Insurance Fund (SWIF), not having the hospital's information at the time it was evaluating the claim, issued an NCP on July 26, 1999, acknowledging that Claimant's injuries were work-related and Claimant began receiving workers' compensation benefits. Sometime thereafter, SWIF obtained Claimant's hospital record which contained his admission that he had been drinking on the morning of his accident. SWIF then filed a petition to review compensation benefits on September 7, 1999, seeking to set aside the NCP alleging that Claimant had alcohol in his system at the time of his injury and his intoxication was the actual cause of his injuries.

After a hearing before the workers' compensation judge (WCJ), the WCJ found SWIF's witness credible that she was unaware that Claimant was intoxicated at the time of his fall when the NCP was issued and SWIF's medical expert credible that the amount of alcohol in Claimant's system as indicated by the blood test taken in the hospital was equivalent to 13 one-ounce shots of whiskey or 13–12 ounce beers causing his impairment. The WCJ did not find Claimant credible that he only had two beers before work. The WCJ then concluded that because Claimant's intoxication caused his injuries, he was not entitled to benefits and, relying upon Section 413 of the Workers' Compensation Act,[1] amended the NCP because it was materially incorrect. Claimant appealed to the Board which affirmed the WCJ.

On appeal to this Court, the majority also affirms the Board because, among other reasons, it reasons that Section 406.1(d)(1) of the Act, 77 P.S. § 717.1(d)(1), only allows for an employer to initiate compensation payments without prejudice and without admitting liability pursuant to a temporary NCP where it is uncertain if a claim is compensable, and "that language suggests that a notice of temporary compensation payable is warranted only when an employer is 'uncertain' as to the compensability of the injury and the extent of liability. An employer, or insurer, faced with facts that, on their face, indicate that an injury is compensable, would not be 'uncertain' as to whether the injury is compensable. In situations where an injury reasonably appears to be the direct result of a work accident, and no apparent exclusions apply, as in the present case, an employer or insurer acts reasonably in assuming that there is no uncertainty as to cause and effect." (Majority opinion at 7–8.) I disagree because, even if an employer has no reason to question whether a claimant's injury is work-related, once an NCP is issued, it is final and may not be amended just because information it obtains subsequently but which existed at the time it issued the original NCP changes its position on the matter.

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 771.

The purpose of issuing an NCP is for the employer to admit liability and acknowledge that the claimant has suffered a work-related injury. If that were not the case, the General Assembly would have not found the need to enact Section 406.1(d)(1) of the Act which allows for a "temporary" NCP and provides that the employer is **not** accepting liability while paying the claimant. If the majority's position were correct, all NCPs, whether they be temporary or "permanent," would be temporary because there would be nothing to distinguish between them. No NCP would ever be final because anytime an employer found that it had a defense that was not discovered at the time it issued an NCP, it could simply file a petition to amend benefits seeking to amend the NCP. Because the fact that Claimant was intoxicated at the time of his injury was in the hospital's report obtained on the date Claimant was injured, but SWIF did not obtain that report until after it issued the NCP, I disagree with the majority that SWIF is entitled to amend its NCP to reflect that information.

Accordingly, I dissent.

Judge SMITH–RIBNER joins.