# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| VNA of St. Luke's Home Health/Hospice, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1312 C.D. 2022 |
| | : | ARGUED: December 4, 2023 |
| Elizabeth Ortiz (Workers' Compensation Appeal Board), | : | |
| Respondent | : | |
| | : | |
| Elizabeth Ortiz, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1362 C.D. 2022 |
| | : | |
| VNA of St. Luke's Home Health/Hospice, Inc. and Tristar Risk Enterprise Management (Workers' Compensation Appeal Board), | : | |
| Respondents | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE LORI A. DUMAS, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**                          **FILED:  July 23, 2024**

Before the Court are the cross-petitions of Elizabeth Ortiz (Claimant) and VNA of St. Luke's Home Health/Hospice, Inc., and Tristar Risk Enterprise Management (collectively, Employer) from an order of the Workers' Compensation Appeal Board.[1]  Claimant petitions for review from the Board's affirmance of the

---

[1] These matters were consolidated by the Court.  For briefing purposes, Claimant was designated petitioner and Employer was designated respondent.

Workers' Compensation Judge's (WCJ) grant of Employer's petitions to modify compensation benefits and denial of Claimant's request for litigation cost reimbursement. Employer petitions for review from the Board's affirmance of the WCJ's order denying Employer's request to set aside a stipulation of facts agreeing to an enlargement of Claimant's injury, originally described as a left shoulder strain, to include a torn left rotator cuff and biceps injury. We (1) affirm the Board's order granting Employer's modification petitions and denying Claimant's request for litigation cost reimbursement; and (2) reverse the Board's order denying Employer's request to set aside the stipulation of facts.

The relevant facts are as follows.[2] Employed as an administrative assistant, Claimant initially filed a claim for a November 2017 work injury in the nature of a left shoulder strain, therein asserting that she fell while attempting to sit on a chair and injured her left shoulder. In May 2018, Employer issued a notice of temporary compensation payable (NTCP) accepting a left shoulder strain.

In June 2019, Claimant filed a claim petition seeking to expand the work injury and asserting that she had developed a left rotator cuff tear and biceps tendon injury. In September 2019, the WCJ circulated an order adopting a stipulation of facts wherein the parties agreed that the work injury had caused additional injuries. In pertinent part, paragraph 9 of the stipulation provided:

> [A]s a result of her November 16, 2017 work incident, [C]laimant suffered [a] left shoulder injury that required a rotator cuff repair and a biceps tenodesis; that she has not yet reached maximum medical improvement; that she has undergone [magnetic resonance imaging (MRI)] studies revealing a probable small recurrent full thickness tear of

---

[2] Feb. 1, 2022 WCJ Decision, Findings of Fact (F.F.) Nos. 1-37.

2

the shoulder; and that she will require additional medical treatment for her work-related condition.[3]

Feb. 1, 2022 WCJ Decision, Finding of Fact (F.F.) No. 2 (footnote added).

In October 2020 and January 2021, respectively, Employer filed two modification petitions asserting that Claimant had failed to respond in good faith to modified-duty job offers that would have paid wages less than her average weekly wage. The first job, offered in September 2020, was to perform temperature screenings on people entering the hospital. The second one, offered in January 2021, was to greet people entering the hospital and to direct them where to go.

While litigating the modification petitions, medical records newly disclosed to Employer demonstrated that the left rotator cuff tear and biceps injury preexisted the November 2017 work accident. In fact, as the WCJ found and the record reflects, Claimant repeatedly falsely denied having suffered, and being treated for, the stipulated injuries *before* the work accident. Consequently, Employer sought to set aside the stipulation of facts attributing those injuries to the work accident.

Ultimately, the WCJ ruled as follows: (1) Employer's modification petitions are granted effective, respectively, September 14, 2020 and January 22, 2021; (2) disability benefits are reinstated effective March 9, 2021, the date Claimant underwent additional work-related left shoulder surgery; (3) Employer's request to set aside the September 2019 stipulation of facts is denied for lack of sufficient competent evidence; and (4) Claimant's litigation costs are not reimbursable.

---

[3] In the stipulation, the parties agreed that Employer was entitled to a suspension of benefits as of June 4, 2018. However, they entered into a supplemental agreement on December 12, 2019, indicating that Claimant's disability recurred on December 2, 2019, and that benefits would begin on that date.

Both parties appealed to the Board. Employer challenged the WCJ's refusal to set aside the stipulation of facts. Claimant asserted that the granting of the modification petitions was not supported by substantial evidence and that the WCJ erred in not granting her litigation costs. The Board affirmed the WCJ's refusal to set aside the stipulation. As for Claimant's cross-appeal, the Board concluded that substantial evidence supported the WCJ's grant of Employer's modification petitions and that Claimant accrued litigation costs solely in defending the modification petitions and not the request to set aside the stipulation.

## Employer's Appeal

Employer contends that its request to set aside the stipulation should have been granted because the nature of Claimant's work injury was materially incorrect. Section 413(a) of the Workers' Compensation Act[4] provides:

> A [WCJ] judge may, at any time, review and modify or set aside a notice of compensation payable [NCP] and an original or supplemental agreement or upon petition filed by either party with the [Department of Labor and Industry (department)], or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such [NCP] or agreement was in any material respect incorrect.

77 P.S. § 771.[5]

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501 - 2710.

[5] A stipulation of facts, adopted by a WCJ, may be a supplemental agreement that can be challenged as materially incorrect under the language of Section 413(a). *See Guzik v. Laurel Ridge Constr. Co.*, 176 A.2d 183 (Pa. Super. 1961) [(superseded by statute as stated in *Spears v. Workmen's Comp. Appeal Bd. (Newman & Co.)*, 481 A.2d 1244 (Pa. Cmwlth. 1984)]. In *Guzik*, a claimant sought to reinstate benefits previously terminated by a referee (the predecessor of modern-day WCJs) based upon a stipulation that disability had ceased. The Superior Court, which then had jurisdiction over workers' compensation appeals, held that a petition to reinstate should be treated as filed under Section 413(a), stating that "the stipulation . . . was in effect a **(Footnote continued on next page…)**

4

In the present case, after the NTCP for a shoulder "strain" resulting from the November 2017 work accident, Claimant filed a June 2019 claim petition asserting that she had developed a left rotator cuff tear and a biceps tendon injury. During examinations by Dr. Jeffrey Malumed, an orthopedic surgeon conducting an independent medical examination (IME), and by her surgeon, Dr. David L. Glaser, Claimant denied any history of shoulder problems prior to the work incident.

In January 2021, Claimant continued to deny preexisting left shoulder symptoms during the litigation of Employer's first modification petitions. On cross-examination and *while under oath*, Claimant testified as follows:

> Q. [Employer's counsel] Now, before the occurrence of your November 16, 2017 work injury . . . had you experienced any symptoms referable to your left shoulder?
>
> . . . .
>
> A. No.
>
> Q. You had never felt any pain before in your left shoulder?
>
> . . . .
>
> A. No.
>
> Q. Before November 16, 2017, had you experienced any pain, any tightness, any restricted motion, any sensation referable to your left shoulder?
>
> A. No.
>
> . . . .
>
> Q. Had you offered any complaints referable to your left shoulder to your family doctor before November 16, 2017?
>
> A. No.

---

supplemental agreement. The [r]eferee's order was not based upon independent findings but was merely an adoption and approval by him of this supplemental agreement." 176 A.2d at 184.

Jan. 6, 2021 Claimant Dep., Notes of Test. (N.T.) at 13-15, Reproduced R. (R.R.) at 551a-53a (quoted in F.F. No. 7).

However, as found by the WCJ, Claimant's denials were false. Claimant subsequently admitted on cross-examination approximately three months after her January 2021 deposition that she had injured her left shoulder in February 2017, approximately nine months before the November 2017 work incident, when she was a pedestrian in a hit-and-run motor vehicle incident.

> Q. [Employer's counsel] Is it true that as a result of that [February 2017] incident, you suffered injury to your left shoulder?
> A. Left shoulder and neck.

April 8, 2021 Hr'g, N.T. at 31; R.R. at 149a.

Accordingly, in a footnote, the WCJ found as follows:

> None of Claimant's responses were true, as pre-injury treatment records bear complaints, symptoms, and treatment to [ ] Claimant's left shoulder prior to the work injury of November 16, 2017. Instances of Claimant's left shoulder complaints, treatment, [and] restrictions[] are borne out in medical records, substantial enough in this litigation to cause Employer's counsel to depose Employer's medical expert [Dr. David Rubenstein] on a second occasion and request the [WCJ] to consider setting aside the [s]tipulation of [f]act[s] incorporated into her order of September 10, 2019.

F.F. No. 7, n.1. Consequently, the WCJ found Claimant's testimony to lack credibility, in general, due to her "denial of pre[-]injury left shoulder problems, despite years of complaints contained in her pre-injury medical records . . . ." F.F. 27(a). Nonetheless, the WCJ denied Employer's request to set aside the stipulation, stating that "[t]he [WCJ] has considered carefully [ ] Employer's request, on the

6

basis of this evidentiary record, to set aside . . . the [s]tipulation of [f]act[s] she approved . . . but does not find sufficient, competent evidence to grant [ ] Employer's request." F.F. No. 36.

On appeal, the Board treated the matter as a legal issue, i.e., as one of waiver, concluding that there was no indication that Employer lacked the opportunity to fully investigate the challenged finding before entering the stipulation and that it failed to act promptly in seeking the relief. In so doing, the Board compared the present situation to those in *Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 522 A.2d 22 (Pa. 1987), *Waugh v. Workmen's Compensation Appeal Board (Blue Grass Steel)*, 737 A.2d 733 (Pa. 1999), and *Mahon v. Workers' Compensation Appeal Board (Expert Window Cleaning)*, 835 A.2d 420 (Pa. Cmwlth. 2003). In each of those cases, it was held that an NCP may be set aside in various situations. In *Barna*, our Supreme Court held that under Section 413 "where . . . an employer promptly commences payment of compensation prior to commencement or completion of investigation into the cause of [the] claimant's injuries and later determines that the claimant's disability was never work-related . . . the employer must be permitted to seek relief" under Section 413(a).[6] 522 A.2d at 24. In *Waugh*, the Supreme Court held that an insurer could have an NCP that was materially incorrect set aside where the employer and employee conspired to intentionally mislead the insurer into the incorrect belief that the employee was eligible for benefits. 737 A.2d at 737. In *Mahon*, this Court held

---

[6] The Supreme Court distinguished this rule from the one in *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 465 A.2d 969 (Pa. 1983). In *Beissel*, where the employer issued an NCP despite having both the opportunity to investigate and actually having investigated the cause of an injury, the Court found that the employer admitted liability. The Supreme Court distinguished *Barna* on the ground that the employer in that case commenced payment before conducting an investigation.

7

that an insurer which, upon initial belief as to the right of a claimant to benefits, issued an NCP (as opposed to an NTCP) could later challenge the NCP because of information received after that issuance indicated that the injury was not compensable. 835 A.2d at 426.

The Board differentiated the instant case from *Barna* (and presumably the other cases) by stating that "there is no indication in this record that [Employer] did not have the opportunity to fully investigate before it entered into the [s]tipulation." Nov. 9, 2022 Board Decision at 18. Rather, Employer "issued multiple Bureau [of Workers' Compensation] documents in 2018 and the [s]tipulation did not occur until September 2019." *Id.* Thus, the Board held, "unlike *Mahon*, [Employer] cannot be said to have acted promptly in seeking this relief," and thus declined to disturb the determination of the WCJ. *Id.*

Although *Mahon* states that the insurer had acted swiftly to challenge the NCP, we cannot discern from *Barna*, *Waugh*, and *Mahon* any time limitation upon a party seeking to challenge a stipulation. Looking to the language of Section 413(a) itself, such a challenge seeking to modify a supplemental agreement may come "at any time." Nonetheless, it is well established that an employer must exercise good faith in workers' compensation proceedings[7] and that the Act is to be liberally construed to effectuate its humanitarian purpose.[8] Consequently, it is implicit that an employer should act within a reasonable time in seeking a modification so as not to obviate the humanitarian purpose of the Act. *See Lemley v. Dep't of Transp.*, 509 A.2d 1380, 1382 (Pa. Cmwlth. 1986) (in the absence of a

---

[7] *See Presby Homes & Servs. v. Workers' Comp. Appeal Bd. (Quiah)*, 982 A.2d 1261, 1266 (Pa. Cmwlth. 2009) (employers must exercise good faith when referring claimants to available jobs within his or her restrictions).

[8] *City of Erie v. Workers' Comp. Appeal Bd. (Annunziata)*, 838 A.2d 598, 601-02 (Pa. 2003).

8

statutorily-mandated time limit, the department was implicitly required to give notice of revocation as a habitual offender within a reasonable time after it received a triggering third conviction and what constituted a reasonable time in any given case would depend upon the circumstances of each case and could not be established in a vacuum).

Here, three months after Claimant's deposition, Employer received medical documentation via the March 2021 deposition of Dr. Glaser indicating that during the weeks and months leading up to the November 2017 work accident, Claimant had been treating for a left shoulder condition that included both a left full-thickness rotator cuff tear and biceps tendinosis. March 18, 2021 Dep. Dr. David Glaser, N.T. at 40; R.R. at 292a. Dr. Glaser first saw Claimant in August 2019 and performed surgery on her in March 2021. *Id*. at 18, 28; R.R. at 270a, 280a. At her initial appointment, Claimant provided a somewhat inaccurate history to him by relaying that she had some symptoms prior to the work accident but felt they were mostly wrist and not shoulder problems. *Id*. at 32; R.R. at 284a.

In August 2019, Claimant also provided Dr. Glaser with the July 2019 IME report from Dr. Malumed. *Id*. In reviewing that report, Dr. Glaser acknowledged that Claimant denied any previous problems with her left shoulder before the work accident when providing her medical history to Dr. Malumed. *Id*. at 33; R.R. at 285a. Dr. Glaser further acknowledged that Dr. Malumed concluded that Claimant's denial was inaccurate because there was a February 2017 MRI of the left shoulder showing *some abnormalities*. However, Dr. Malumed's report indicated that he did not have the ability to review that MRI. *Id*.

In addition, Dr. Glaser also reviewed May 2017 medical records from St. Luke's Spine and Pain with an office note from Dr. Scott Loev diagnosing

9

Claimant with, *inter alia*, acute pain and adhesive capsulitis of the left shoulder. *Id.* at 36-37; R.R. at 288a-89a. There were also notes indicating that Dr. Gary Oxfeld compared a February 23, 2017 MRI of the left shoulder with one performed on May 4, 2016, neither of which Dr. Glaser reviewed.[9] *Id.* at 39-40; R.R. 291a-92a. Further, Dr. Glaser's review of these records indicated that Claimant received a cortisone injection in September 2017, about eight weeks before her November 2017 work accident. *Id.* at 42; R.R. at 294a.

As noted, the instances of Claimant's left shoulder issues, as borne out in medical records, were substantial enough for Employer to depose Dr. Rubenstein a second time. As Employer's counsel stated:

> [D]uring the course of this process [Employer] has come to learn that there is substantial medical evidence relating to the body part that's at issue in this case detailing a pre[]existing condition.
>
> That is information that [Employer] was not aware of from the outset of this claim so I did, on that basis, issue a letter to [the WCJ] and to [Claimant's counsel] preserving [Employer's] right to offer rebuttal to Dr. Glaser's recent testimony and in the meantime, I have subpoenaed records relating to Claimant's pre[]existing left shoulder condition.

Record, Item No. 19, April 18, 2021 H'rg, N.T. at 14; R.R. at 132a.

At his second deposition, Dr. Rubenstein reviewed additional medical records predating the November 2017 work accident. He observed that the records indicated that Claimant was symptomatic as far back as June 2016. July 26, 2021 Dr. David L. Rubenstein Rebuttal Dep., N.T. at 6-7; R.R. at 864a-65a. He noted that

---

[9] Although the February 2017 MRI study referred to a May 2016 left shoulder study, Employer represented that it was unable to locate a copy of the earlier study. Employer's Br. at 20 n.6.

a February 23, 2017 MRI revealed that she had a small anterior supraspinatus tear of the left shoulder without a full thickness component. *Id*. at 16; R.R. at 872a. By September 13, 2017, he noted that her left shoulder condition was getting progressively worse and causing her an "occupational disability." *Id*. at 9; R.R. at 866a. *See also* March 18, 2021 Dr. David Glaser Dep., Ex. D-2, Sept. 13, 2017 Follow-up Visit Summary from the Spine and Pain Center; R.R. at 400a. Dr. Rubenstein testified that a December 31, 2017 MRI indicated a progression in the rotator cuff tear in comparison to a February 23, 2017 MRI, with the intervening event being the November 2017 work accident. *Id*. at 19-20; R.R. at 876a-77a.

This case boils down to how much an employer is expected to do by way of investigation and within what timeframe when a claimant misrepresents her condition and/or the existence of prior injuries. Measuring the impact of a misrepresentation and assessing when the other party's delay in perceiving and investigating it results in a waiver presents an imprecise exercise in weighing the evidence. A review of the purpose of the Act provides guidance. As "remedial legislation designed to compensate claimants for earnings loss occasioned by work-related injuries[,]" the Act seeks to "provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer." *City of Erie v. Workers' Comp. Appeal Bd. (Annunziata)*, 838 A.2d 598, 601 (Pa. 2003) (citations omitted). Its purpose is to substitute a method of accident insurance in place of common law rights and liabilities for all covered employees, with the goal of relieving them from the economic consequences of their injuries and making the consequences a part of doing business to be ultimately paid by the consuming public. *Id*. (citations omitted).

Good faith on the part of both parties is necessary to fulfill and advance the humanitarian purpose of the Act. To that end, workers' compensation proceedings should be as streamlined as possible. Obviously, when one party learns that the other has been less than forthcoming on a material issue, the proceedings may be prolonged and become more complicated. Hence, a claimant's misrepresentation does not occur in a vacuum, especially where it results in increasing the cost to be borne by the consuming public.

Here, despite having denied any left shoulder injury at the time of the IME and multiple times thereafter, Claimant attempts to frame this case as one where she misrepresented her condition but the fault somehow lies with Employer. To that end, she makes much of the two years ensuing between the November 2017 work injury and the September 2019 stipulation as the relevant timeframe in which to measure whether Employer unduly delayed in seeking to set aside the stipulation. However, notwithstanding an *arguable* hint of a preexisting left shoulder condition by virtue of a prior radiology report regarding a prior MRI, the relevant measurement is from when Employer became aware that Claimant had a medically significant preexisting injury to the same area and acted on that knowledge. Given the time that ensued between Employer's March 2021 receipt of documentation and Dr. Rubenstein's second deposition in July 2021, we conclude that Employer did not unduly delay in making its request to set aside the stipulation.

Turning to the extent to which Employer should have conducted a more vigorous investigation before entering the stipulation, it bears repeating that Claimant time and again misled Employer, her own surgeon, and the workers' compensation tribunal as to pre-existing left shoulder issues. Notably, Employer is not seeking to set aside its original acceptance of Claimant's work injury.

12

Consequently, it is disingenuous for Claimant to attempt shifting the blame for her repeated misrepresentations when such falsification had the practical effect of complicating the proceedings. If extensive pre-injury records were at play in all workers' compensation cases, these cases would become even more costly and take longer to process and litigate. Accordingly, notwithstanding an *arguable* hint of a preexisting condition, there was nothing under the circumstances of this case to trigger any greater investigation beyond Employer's examination of contemporary records and an IME.

### Claimant's Cross-Appeal

Claimant first argues that the Board erred in determining that substantial evidence supported the decision of the WCJ to grant Employer's modification petitions. We disagree. In determining that Claimant failed to follow through on the job offers in good faith, the WCJ found the testimony of Employer's witnesses to be more credible than that of Claimant. F.F. Nos. 30-31. Employer's workers' compensation manager, Timothy Schwalm, testified extensively as to positions involving taking temperatures of individuals entering the hospital and greeting people as they entered the hospital. F.F. Nos. 8-12. Georgia Winfield, the network director of volunteer services and student relations, testified as to the specifics of the aforementioned positions and her interactions with Claimant. F.F. Nos. 13-16. The WCJ is the ultimate fact finder and we cannot reweigh the evidence or disturb his or her credibility determinations. *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette)*, 954 A.2d 726, 729 n.3 (Pa. Cmwlth. 2008). Accordingly, the Board did not err in granting the modification petitions.

Next, Claimant contends that the Board erred in upholding the WCJ's denial of her request for litigation cost reimbursement. Claimant's argument is without merit. Section 440 of the Act[10] provides:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or its dependent, as the case may be in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings.

77 P.S. § 996(a).

As the Board determined, Claimant was not successful in defending against the modification petitions. As noted, the fact finder rejected her evidence that she pursued the job offers in good faith. In addition, Claimant essentially accrued litigation costs solely in defending the modification petitions. Consequently, she did not incur litigation costs on an issue on which she might be deemed to have prevailed, the denial of Employer's request to set aside the stipulation, because she did not specifically address that issue and the WCJ denied Employer's request after finding Employer's evidence to be insufficient. Accordingly, Claimant's request for litigation cost reimbursement was properly denied.

---

[10] Section 440(a) was added by the Act of February 8, 1972, P.L. 25.

14

## Conclusion

Accordingly, we (1) affirm the Board's order granting Employer's modification petitions and denying Claimant's request for litigation cost reimbursement; and (2) reverse the Board's order denying Employer's request to set aside the stipulation of facts.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

VNA of St. Luke's Home      :
Health/Hospice, Inc.,      :
                 Petitioner      :
     :
        v.      :    No. 1312 C.D. 2022
     :
Elizabeth Ortiz (Workers'      :
Compensation Appeal Board),      :
                 Respondent      :

Elizabeth Ortiz,      :
                 Petitioner      :
     :
        v.      :    No. 1362 C.D. 2022
     :
VNA of St. Luke's Home      :
Health/Hospice, Inc. and Tristar Risk      :
Enterprise Management (Workers'      :
Compensation Appeal Board),      :
                 Respondents      :

## O R D E R

AND NOW, this 23rd day of July, 2024, the order of the Workers' Compensation Appeal Board granting the modification petitions of Employer, VNA of St. Luke's Home Health/Hospice, Inc., and denying the request for litigation cost reimbursement of Claimant, Elizabeth Ortiz, is hereby AFFIRMED. The Board's order denying Employer's request to set aside the stipulation of facts is hereby REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita