541 A.2d 838

Joseph R. Barna, Sr., Petitioner *v.* Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corporation), Respondents.

Argued March 24, 1988, before Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Richard G. Spagnolli,* with him, *John W. McTiernan, McArdle, Caroselli, Spagnolli & Beachler,* for petitioner.

*Roy F. Walters, Jr.,* with him, *Michael D. Sherman, Fried, Kane, Walters & Zuschlag,* for respondent, Jones and Laughlin Steel Corporation.

OPINION BY JUDGE PALLADINO, May 20, 1988:

The Pennsylvania Supreme Court in *Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel) (Barna II),* 513 Pa. 518, 522 A.2d 22 (1987), reversed this court's decision in *Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corporation) (Barna I),* 88 Pa. Commonwealth Ct. 83, 488 A.2d 651 (1985), and remanded the case to us for review of the issues not previously addressed. We vacate and remand.

The circumstances of this case were detailed in *Barna I* and *Barna II.* Therefore only a brief recitation of facts, in addition to the history of the case, will be given. Joseph R. Barna, Sr. (Claimant) injured his back while working for Jones & Laughlin Steel Corporation (Employer) on either July 18 or 20, 1977. Claimant reported the injury to Employer on July 22, 1977. In August, 1977, Claimant, complaining of acute pain in his back, was admitted to the hospital and spent approximately 18 days there. Claimant's discharge summary listed eleven diagnoses. Critical in the ultimate resolution of this case are the first two listed: 1) lumbosacral strain with radiculitis and 2) latent lues [syphilis] with probable neurolues [neurosyphilis].[1]

---

[1] The following definitions and description may be useful in understanding this diagnosis and Claimant's argument.

**Latent syphilis** is that stage of the disease in which there are no clinical signs or symptoms of the infection. Patients without signs or symptoms but with abnormal spinal fluid findings have a much more serious prognosis and are not regarded as having latent syphilis but are classified instead as having asymptomatic neurosyphilis.

Latent syphilis is by far the most frequent type of syphilis. Routine serologic testing is the only way in which the majority of patients with latent syphilis can be recognized.

Employer, on October 10, 1977, executed a notice of compensation payable which indicated that Claimant had sustained acute lumbosacral strain as a result of a work injury and was entitled to compensation for a total

> Although the syphilitic infection is not clinically evident during the latent period, it may be producing serious changes in the viscera. Often the spirochete [general term for the type of bacteria causing the disease] exists within the body throughout the entire lifetime of the host without producing any apparent effects upon health and longevity. Most of the patients with late latent syphilis develop sufficient resistance to their infection to prevent late clinical manifestations.
>
> The diagnosis of latent syphilis is one of exclusion, and a careful history and physical examination should be made for clinical evidence of this disease. Since the diagnosis of latent syphilis is dependent upon the serologic test, false positive reactions must be ruled out. Treponema palladium [causative agent of syphilis] immobilization (TPI) tests or the newer treponemal antigen tests should probably be carried out routinely in patients with positive serologic tests in whom there is no history or clinical evidence of syphilis and in whom the diagnosis seems unlikely.

Principles of Internal Medicine 1631 (McGraw Hill Book Co. 5th ed. 1966).

> **Neurosyphilis** may be divided into four groups: asymptomatic, meningovascular, tabes dorsalis, and general paresis. Division is not absolute and there may be considerable overlap between syndromes. Current cases of neurosyphilis are more likely than heretofore to be variants of the classic syndromes, possibly as a result of use of antimicrobials [antibiotics] for other diseases.
>
> **Tabes dorsalis** is a slowly progressive degenerative disease involving the posterior columns and posterior roots of the spinal cord, resulting in progressive loss of peripheral reflexes, impairment of vibration and position sense, and progressive ataxia [loss of coordination]. There may be chronic destructive changes in the large joints of the affected limbs in far advanced cases (Charcot's joints). Incontinence of the bladder and impotence are common.

disability beginning July 23, 1977. On December 10, 1978, Employer filed a petition for review pursuant to section 771 of The Pennsylvania Workmen's Compensation Act (Act),[2] alleging a change in the nature and character of Claimant's disability. The evidence which Employer presented was not directed to showing that Claimant's disability had changed but to proving that the disabling back injury had never been related to the work injury suffered in July, 1977.

In support of its petition, Employer presented the deposition testimony of Dr. Anas A. El Attar, Employer's plant physician. Dr. El Attar testified that he informed Employer on October 13, 1977, after reviewing Claimant's hospital records, that he felt Claimant's disability was not related to his job. El Attar deposition at 13-14. Dr. El Attar opined that Claimant's disability was the result of tertiary (late) syphilis[3] and not the

---

Sudden and severe painful crises of uncertain cause are a characteristic part of the syndrome.
Cecil, Textbook of Medicine 1578 (J. Wyngaardner & L. Smith 16th ed. 1982).

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §771. Section 771 states, in pertinent part:
A referee of the department may, at any time, review and modify or set aside a notice of compensation payable . . . if it be proved that such notice of compensation payable . . . was in any material respect incorrect.

[3] *Late or tertiary syphilis* is the destructive stage of the disease and can be crippling. . . . Late syphilis is usually very slowly progressive, although certain neurologic syndromes may have sudden onset owing to endarteritis [thickening of the lining of the arteries] and thrombosis [formation of clots] in the central nervous system. Late syphilis is noninfectious. Any organ of the body may be involved, but three main types of disease may be distinguished: late benign (gummatous) [granulomas], cardiovascular, and neurosyphilis.
Cecil, Textbook of Medicine 1577.

work injury. *Id.* at 17, 19. Dr. El Attar's opinion was based, in large part, on Claimant's hospital records.[4] *Id.* at 23-38. Dr. El Attar equated the discharge diagnosis of latent lues with late syphilis, *id.* at 37, and probable neurosyphilis with Claimant not having 100% of his nervous system involved. *Id.* at 38.

Claimant presented the deposition testimony of Dr. Schor, who opined that Claimant's disability was caused by a myofacial (muscular) injury to his back as a result of the July, 1977 work injury. Schor deposition at 9. Dr. Schor defined latent lues as "third stage syphilis which is not active at the time." *Id.* at 8.

The referee, in an opinion issued May 19, 1982, concluded that, as of December 4, 1978, Claimant's disability was not work related and terminated his workmen's compensation as of that date. Referee's conclusions of law 8, 9. The Workmen's Compensation Appeal Board (Board), on October 20, 1983, affirmed. Claimant appealed to this court. In an opinion issued March 4, 1985, this court reversed on the basis of the Pennsylvania Supreme Court decision in *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.),* 502 Pa. 178, 465 A.2d 969 (1983).

---

[4] Claimant's hospital records show a positive serology (blood serum) test for syphilis. A syphilis test then was ordered on his cerebral spinal fluid. However, the sample was lost prior to the test being performed and another spinal tap was not performed.

A false positive response [serology test] may occur with acute bacterial or viral infections [e.g. infectious mononucleosis] and following vaccination for smallpox. Chronic false positive reactions occur with many autoimmune diseases, including systemic lupus erythematosus, thyroiditis and hemolytic anemia. . . . The incidence of false positive reactions has been estimated at 3 to 40 per cent . . . , making the more specific tests of special importance.

Fishman, Cerebrospinal Fluid in Diseases of the Nervous System 280 (1980).

In *Beissel,* the employer filed a termination petition,[5] two years after filing a notice of compensation payable, alleging that the claimant's disability was unrelated to her admitted work injury. The referee granted the termination petition. The Board and this court affirmed. The Supreme Court reversed, stating:

> [Employer] may not now, under the guise of a termination petition, come into court and . . . contradict precisely that which it admitted in its notice of compensation payable, namely that [claimant's] disability at the time the notice of compensation payable, . . . was related to her 1975 fall at work.

*Beissel,* 502 Pa. at 183, 465 A.2d at 971-72.

This court concluded that the situation in *Barna I* was identical to that in *Beissel:* Employer was alleging, more than one year after executing notice of compensation payable, that Claimant's disability had never been related to his July 1977 work injury. The Supreme Court, however, found the situation distinguishable from *Beissel,* concluding in *Barna II:*

> The instant case is distinguishable from Beissel because the record does not show that J & L actually investigated claimant's condition prior to the notice of compensation payable. . . . Commonwealth Court also based its decision upon a perceived potential for abuse if employers are

---

[5] The termination petition was filed pursuant to section 772 of the Act, 77 P.S. §772. This court, in *Barna I,* held that the fact that Employer utilized section 771 rather than section 772 was not sufficient to distinguish *Beissel.* The Supreme Court did not mention this point and distinguished the two cases by concluding that in the instant case, "the record does not show that J & L actually investigated claimant's condition prior to the notice of compensation payable." *Barna II,* 513 Pa. at 522, 522 A.2d at 24.

permitted to repeatedly challenge the cause of a claimant's disability. This observation is certainly consistent with the spirit of our decision in Beissel. . . . Repeated litigation of the cause of a claimant's injury is wasteful and, thus, to be avoided. However, there is no hint on this record that J & L is guilty of such abuse.

*Id.* at 522, 522 A.2d at 24. The case was remanded to this court to review the issues raised by Claimant which were not previously considered.

Claimant raised two issues, in addition to that considered in *Barna I* and *Barna II,* in his original appeal to this court:[6] (1) whether the medical evidence of Dr. El Attar may be considered as substantial evidence to support the referee's finding that Claimant's disability was not related to his work injury; and (2) whether there is any legal and/or factual basis for the date selected by the referee for the termination of Claimant's benefits. Unfortunately, it is impossible for this court to address these issues on the record before us for the reason which follows.

The referee's finding of fact number 29 states:

We have carefully reviewed the record, including the hospital records and the testimony of the physicians, and conclude that the claimant's disability was not and is not work related, and, in view of the above, we make said findings to apply to that period beginning December 4, 1978.

Claimant contends that the only evidence which could support such a conclusion was the medical testimony of

---

[6] Our scope of review is limited to determining whether Claimant's constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Gabriel v. Workmen's Compensation Appeal Board (No. 1 Contracting Corp.),* 102 Pa. Commonwealth Ct. 470, 518 A.2d 895 (1986).

Dr. El Attar. Claimant further argues that Dr. El Attar's testimony does not provide substantial evidence for this conclusion. Claimant alleges Dr. El Attar's testimony is premised on a misinterpretation of Claimant's hospital records, making Dr. El Attar's medical opinion incompetent. Employer, in addition to defending the competency of Dr. El Attar's testimony, points out portions of the medical records and Dr. Schor's testimony which it argues provide substantial support for a finding that Claimant's disability was the result of neurosyphilis rather than the work injury.

A review of the referee's findings of fact reveals only a recitation of the evidence, possible inferences from this evidence, and the allegations of the parties.[7] There

---

[7] The referee's findings of fact were:

1. The claimant was injured on July 18, 1977.

2. Notice of Compensation Payable, executed October 10, 1977, provided, inter alia:

   (a) The claimant sustained acute lumbo sacral strain.

   (b) He was entitled to compensation for total disability at the rate of $199.99 per week.

   (c) Disability began July 23, 1977.

3. The claimant later filed a claim petition, amended to a review petition.

4. By Order, dated October 2, 1978, this referee ordered payment of reimbursement to claimant for medical expenses.

5. On December 4, 1978 the defendant filed the instant review petition alleging a change in nature and character of claimant's disability without further specificity.

6. The claimant filed a responsive Answer averring that the claimant remained totally disabled.

7. By Order, dated November 19, 1980, this referee granted the request of defendant for an order of supersedeas, which was made effective as of November 19, 1980.

8. Inter alia, the claimant testified in his own behalf, introduced records of St. Clair Memorial Hospital, Monte-

are no specific factual findings to support his conclusion that Claimant's disability was not and is not work related. There are no findings with respect to the cause of Claimant's disability and whether he actually suffers

fiore Hospital, and the South Side Hospital in Pittsburgh, plus the testimony of Gerald I. Schor, M.D., by deposition.

9. Inter alia, the defendant introduced the testimony, by deposition, of Anas El Attar, M.D.

10. Dr. Schor testified for the claimant.

11. He saw the claimant on September 14, 1981.

12. The claimant told the doctor that the date of injury was July 20, 1977.

13. Dr. Schor examined various hospital records. To him, the important thing in the record was the diagnosis of latent lues, i.e. third stage syphilis which was not active at the time.

14. His opinion was that the claimant had a myofacial injury on July 20, 1977.

15. Dr. Schor was not aware of the claimant's course of medical treatment since the work injury.

16. As, according to this doctor, there was no way of being certain that the lues were latent, he apparently had been given penicillin as a precautionary measure.

17. July 26, 1977 record of St. Clair Memorial Hospital shows that x-rays showed moderately advanced osteoarthritis.

18. South Side Hospital records for admission of August 1—August 18, 1977, shows [sic] the final diagnosis as:

1. Lumbosacral strain with radiculitis
2. Latent lues with probable neurolues
3. Sinusitis with mild septal defect of nose
4. Mild pulmonary fibrosis
5. Hypertension
6. History of renal calculi
7. Deafness
8. Old anterior septal M.I.
9. Positive skin test for TB
10. D.M. adult onset mild [Diabetes mellitus]
11. Coronary insufficiency

from neurosyphilis. There is no finding on whether Claimant even suffered a work related injury. There is no indication of who or what the referee believed. Without specific findings of fact on these matters we

19. Montifore [sic] Hospital records for the admission of November 17—December 9, 1977 list 'Final Diagnosis:
    1. Degenerative arthritis of the lumbar spine.'

20. Dr. El Attar testified for the defendant.

21. The deposition record shows that the work injury occurred July 18, 1977.

22. This physician stated that the claimant was a 62 year old man suffering from tertiary syphilis.

23. Dr. El Attar was of the opinion that the claimant's disability is primarily due to neurosyphilis, and also to hypertension and coronary insufficiency. His opinion was that there was no relationship between any of these conditions and the claimant's work.

24. The defendant has attempted to prove that the claimant did not sustain any work related injury on or about July 18, 1977, and, that if he did, all disability was due to other causes.

25. On October 10, 1977 the defendant issued a Notice of Compensation Payable stating that the claimant sustained acute lumbo sacral strain on July 18, 1977 and was entitled to compensation for total disability.

26. On October 2, 1978 this referee issued an Order, based on the stipulation of the parties, that the defendant reimburse claimant for various medical bills he paid. The Findings of Fact of that determination include a statement that the claimant continues to receive compensation for total disability at the rate of $199.00 per week. This decision was not appealed.

27. On December 4, 1978 the defendant filed the instant Review Petition averring that, 'There has been a change in the nature and character of claimant's disability and this case should be reviewed by the compensation authorities.' The said petition listed the date of injury as July 20, 1977 (sic); the Notice of Compensation Payable listed the date as July 18, 1977.

28. We have carefully considered the position of the parties and determine that the defendant is precluded by facts

cannot address Claimant's arguments and perform our appellate review. *Universal Trucking, Inc. v. Workmen's Compensation Appeal Board (Hassell),* 112 Pa. Commonwealth Ct. 428, 535 A.2d 722 (1988).

Accordingly, we vacate and remand.

ORDER

AND NOW, May 20, 1988, the order of the Workmen's Compensation Appeal Board is vacated and the case remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

and law from asserting that the claimant did not sustain a work injury in July 1977 or from asserting that any disability the claimant had was not work related, as to all periods prior to December 4, 1978 when it filed the instant review petition. We further find that the defendant has, by its conduct, waived any right to make such assertions for the prior periods and is estopped by its conduct from making such assertions.

29. We have carefully reviewed the record, including the hospital records and the testimony of the physicians, and conclude that the claimant's disability was not and is not work related, and, in view of the above, we make said findings to apply to that period beginning December 4, 1978.

30. This referee granted the defendant a written Order of Supersedeas, effective as of November 19, 1980. The defendant continued to pay compensation for total disability to the claimant for the period to and including December 26, 1980.

31. The defendant is entitled to an order of termination effective as of December 4, 1978.