# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lorie Rodriguez, : 
                    Petitioner : 
                  : 
           v. :   No. 1355 C.D. 2015
                  :   SUBMITTED:  December 18, 2015
Workers' Compensation Appeal : 
Board (Pitney Bowes, Inc.), : 
               Respondent : 

BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**               **FILED:  May 4, 2016**

Claimant Lorie Rodriguez petitions this Court for review of a Workers' Compensation Appeal Board (WCAB) order that affirmed the decision on remand of a Workers' Compensation Judge (WCJ) granting Employer Pitney Bowes, Inc.'s request to review the description of injury set forth on the notice of compensation payable (NCP), granting Employer's termination petition, granting Employer's suspension petition and denying Claimant's review petition. We affirm.

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

The history of this case has been thoroughly recounted in this Court's previous opinion in *Rodriguez v. Workers' Compensation Appeal Board (Pitney Bowes, Inc.)* (Pa. Cmwlth., No. 1295 C.D. 2012, filed May 24, 2013) (*Rodriguez I*). We reiterate the WCJ's findings here to the extent we deem necessary.[2] Suffice it to say that, on March 3, 2009, Claimant slipped and fell at work while performing her work as a "pre-sorter." Employer issued a temporary notice of compensation payable (TNCP) on March 23, 2009, and a notice of compensation payable (NCP) on May 4, 2009. Both documents described Claimant's injury as a right knee anterior cruciate ligament (ACL) tear. On January 12, 2010, Claimant had arthroscopic surgery on her right knee, performed by Dr. David Canner, who found no ACL tear. On November 15, 2010, Employer filed a termination petition, alleging that Claimant had fully recovered from her work-related injury as of July 13, 2010, the date of an independent medical examination (IME) performed by Dr. John Perry, one of Employer's experts. Employer also filed a suspension petition, alleging that it offered Claimant her previous job as of July 13, 2010. Claimant filed a timely answer, denying the allegations of Employer's petitions. Claimant also filed a review petition on December 2, 2010, seeking to modify the description of her injury in the NCP to include additional injuries resulting from her March 3, 2009, fall, *viz.*, an unsteady gait and resultant pain in her left knee, lower back and hips.

The petitions were consolidated for disposition and assigned to a WCJ. At the December 22, 2010, hearing, Employer orally requested to amend the

---

[2] The bulk of the WCJ's findings in his original opinion and in his opinion on remand that we recount here are nearly identical, excepting those findings detailing for remand purposes Employer's investigation into Claimant's injury at the time it issued the NCP.

description of Claimant's work injury contained in the NCP, asserting that, while the document had accepted liability for an ACL tear of Claimant's right knee, Dr. Canner's operative note indicated that her ACL was thoroughly intact. Moreover, Employer pointed to the fact that Dr. Perry believed Claimant had suffered merely a right knee contusion at the time of the March 3, 2009, work incident. Claimant did not object to Employer's motion to amend her work injury description, which, in any event, pre-dated the deposition medical testimony in this case.[3]

In support of its petition for suspension of Claimant's benefits, Employer presented the testimony of Valerie Klingaman, a human resources generalist for Employer. Ms. Klingaman testified that, based on a July 2010 report she received from Dr. John Perry releasing Claimant to work without restrictions, she sent a job offer letter to Claimant in September 2010 offering Claimant the pre-sorter position beginning on October 4, 2010. Claimant, however, has not returned to that position, although it remains available. WCJ's (original) Decision circulated August 9, 2011, at 5, Finding of Fact (FF) No. 8, 8(c) and 8(g)-(h).

In support of its termination and suspension petitions (and in opposition to Claimant's review petition), Employer also presented Dr. Perry's deposition testimony. *Id.* at 3, FF No. 7. Dr. Perry reviewed Dr. Canner's operative report and noted that Claimant's ACL was never torn. Dr. Perry testified to the effect that "Claimant has osteoarthritis of the right knee, osteoarthropathy, i.e., arthropathy being the structural or pathologic changes with arthritis meaning inflammation of the joint and was status-post arthroscopic debridement of that

---

[3] Section 413(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 771, provides: "A [WCJ] may, at any time, review and modify or set aside a [NCP] … or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such [NCP] … was in any material respect incorrect."

3

knee." *Id.* at 4, FF No. 7(f). Dr. Perry also testified that Claimant had a left knee contusion and was obese at five feet, seven inches tall and three-hundred and twenty pounds. He explained that, in his opinion, "there was nothing in the changes seen [in her right knee] that told him that they were posttraumatic, i.e., that there [were] no objective signs of trauma." *Id.* Dr. Perry relied for his opinion in part on a March 2009 MRI, taken a few days after the incident, showing Claimant to have, among other things, marked degenerative changes and osteoarthritis; he also relied upon his own evaluation of Claimant and the surgical note. *Id.*, FF No. 7(e)-(f). Dr. Perry further testified that, considering the knee's current state and based only on the work injury, Claimant had no need of physical restrictions or medical treatment, and he filled out an affidavit of recovery. *Id.*, FF No. 7(h). While the doctor asserted that Claimant could perform the pre-sorter job based merely upon work injury considerations, he nonetheless noted in a November 26, 2010, report that, in his opinion, Claimant would have difficulty accommodating the pre-sorter job due to her osteoarthritis of the knee and her body weight. *Id.* at 4-5, FF No. 7(i).

Employer further presented the deposition testimony of Dr. Robert W. Mauthe, who performed an IME of Claimant on February 9, 2011. Dr. Mauthe noted that Claimant, by history, had received medical care for her knees prior to her work injury and that a June 13, 2008, MRI of her right knee showed degenerative changes, a right medial meniscus tear, and an increased ACL signal or joint effusion. *Id.* at 5-7, FF No. 9(a)-(d). Dr. Mauthe also testified that the March 6, 2009, MRI showed no material change and that a May 3, 2010, post-surgical MRI differed only to the extent that it showed post-operative changes to be expected based upon the procedure that Dr. Canner performed on January 12,

4

2010. *Id.* at 7, FF No. 9(d). Critically, Dr. Mauthe testified that Claimant's ACL was intact. *Id.*, FF No. 9(e).

Furthermore,

[b]ased upon the history, a review of the medical records and the diagnostic studies and the physical examination that he performed, [Dr. Mauthe] testified that the diagnosis for the work injury in this case was a contusion of the right knee as a direct result of the fall sustained in the course of employment on March 3, 2009. … The Doctor went on to opine that there was no injury to the left knee as a result of the March 3, 2009 fall and cited to the lack of any documentation in the medical records proximal to the injury that Claimant had suffered. … Based upon this same factor, the Doctor also opined that Claimant did not suffer an injury to her back or her hips that would be related to the March 3, 2009 fall. … Finally, the Doctor testified that Claimant did not suffer an injury to her right anterior cruciate ligament as a result of the March 3, 2009 fall. … Moreover, the Doctor opined that the March 3, 2009 incident did not aggravate Claimant's pre-existing degenerative arthritis in both knees nor did it cause tears in the menisci of both knees. … The Doctor reasoned that there was no substantial or material change in the underlying pre-existing condition and pointed to the fact that the subjective complaints and the imaging studies were unchanged as well as the fact that the operative note found no evidence of acute trauma such as bleeding or acute synovitis. … There is no evidence to show that there were any tears in the left knee and the [suggestion that there was a tear in the right knee before the work injury, was degenerative,] i.e., due to bone on bone process occurring within the knee.[4]

---

[4] This last sentence contained typographical errors in the original WCJ decision, but the errors were corrected on remand.

5

[Dr. Mauthe] opined that Claimant had made a complete and full recovery from the right knee contusion that she sustained as a result of the fall on March 3, 2009, that there is no focal impairment as a result of this fall, and that Claimant's current complaints are a direct result of her pre-existing longstanding arthritic condition. … Claimant requires neither treatment nor any restrictions as it pertains to the March 3, 2009 work injury.

[Doctor Mauthe] opined that based upon Claimant's condition related to the effects of the work injury and her status post surgery, Claimant was capable of performing the job offered to Claimant in September 2010 as of the date of his evaluation.

*Id.* at 7-8, FF No. 9(h)-(j) [footnote added].

In support of her review petition (and in defense of Employer's termination and suspension petitions), Claimant testified on her own behalf, acknowledging that she had pre-existing knee problems but that after the March 3, 2009, work incident, she worked part time before stopping work completely in October 2009. Claimant testified that she does not feel capable of returning to work and she has not been released to return to work by her treating physician, Dr. Joseph P. Guagliardo. *Id.* at 8-9, FF No. 10, 10(a), 10(f)-(g).

Dr. Guagliardo, who initially evaluated Claimant on October 4, 2010, *id.* at 9, FF No. 11 and 11(a), also testified on behalf of Claimant. Dr. Guagliardo diagnosed Claimant's March 3, 2009, work injury "as a tear of the menisci" and "an osteochondral fracture to the knee[.]" *Id.* at 10, FF No. 11(e). He acknowledged that Dr. Canner found no ACL tear. *Id.* Regardless, Dr. Guagliardo opined that Claimant's March 3, 2009, work injury aggravated her knee condition and caused some of the conditions from which she is presently suffering. *Id.*, FF No. 11(f). Moreover, Dr. Guagliardo did not feel that Claimant had returned to

baseline and, instead, considered her to be a candidate for total knee replacement surgery. *Id.*, FF No. 11(e). Even so, he agreed that Claimant had knee problems pre-dating her March 3, 2009, work injury and that her obesity could "absolutely" accelerate her degenerative knee condition, even without repeat trauma. *Id.*, FF No. 11(g)-(h). Dr. Guagliardo opined that Claimant cannot perform any kind of work so long as she uses a walker and must take weight off her legs. *Id.* at 11, FF No. 11(j).

The WCJ considered the evidence and found Claimant's testimony credible to the extent that she testified to a March 3, 2009, slip and fall at work, to working in a partial capacity for a limited period, and to stopping work thereafter. The WCJ also credited Claimant's testimony with respect to certain of her symptoms, although he did "not credit the extent or the severity" of her complaints as regards her pre-work injury condition versus her present condition. *Id.*, FF No. 12(a). The WCJ explained that the "credible medical evidence" showed Claimant had prolonged and significant problems with both knees before she was injured at work, and no significant difference existed between the pre-injury MRI and the MRI taken right after Claimant's work injury. *Id.* Thus, the WCJ felt that resolution of the medical testimony was particularly critical here. *Id.*

In this vein, the WCJ found the testimonies of Dr. Mauthe and Dr. Perry to be more credible and/or persuasive than the testimony of Dr. Guagliardo, relying on the fact that, in the WCJ's estimation, Dr. Guagliardo did not sufficiently compare Claimant's pre-and post-injury MRI studies and had not as thoroughly analyzed Claimant's past medical history as had Dr. Mauthe. *Id.* at 12, FF No. 12(c). With respect to Employer's medical expert testimony, the WCJ specifically found:

7

[H]aving carefully reviewed the deposition testimony of both Dr. Perry and Dr. Mauthe, [this Judge] finds the testimony of both of these Doctors to be competent, credible and persuasive. This Judge found the testimony of each of these Doctors to be well reasoned and logical, not shaken upon cross examination and, in specifically in [sic] the case of the testimony of Dr. Mauthe, well supported by the objective diagnostic studies that had been performed both pre-injury and post injury. This Judge was most impressed with the testimony of Dr. Mauthe and his analysis of the medical records that pre dated the work injury together with his comments concerning the post injury diagnostic studies, including the pre-injury MRI and post-injury MRI. When viewing the combined testimony of Dr. Mauthe and Dr. Perry, this Judge accepts the testimony of Dr. Mauthe and the testimony of Dr. Perry on the issue of the correct and limited nature of the March 3, 2009 injury, i.e., a knee contusion, and the fact that Claimant has recovered from the same. *This Judge also noted that all of the medical evidence presented in this case, including the testimony of Claimant's own medical expert as well as an operative report referred to by all of the medical experts who testified, clearly establishes that the description of injury on the [NCP], i.e., "Right Knee ACL tear", was factually wrong. All of the experts testified that this condition was not found upon arthroscopic surgery.* This Judge accepts the testimony of Dr. Perry, that given the injury sustained by Claimant on March 3, 2009, and solely based upon that injury, Claimant was able to return to work as a Presorter [sic]. Likewise, this Judge credits the testimony of Dr. Mauthe, that as of the date he evaluated Claimant and given the limited nature of the injury that Claimant sustained on March 3, 2009, she was capable of returning to work. *Although the overall testimony of Dr. Perry and Dr. Mauthe is viewed by this Judge as consistent, to the extent that there is any conflict or material difference between the ultimate opinions or testimony of these*

8

> *Doctors, this Judge accepts the opinions of Dr. Mauthe as the medical facts of this case.*

*Id.* at 11-12, FF No. 12(b) (emphasis added).

The WCJ also found Ms. Klingaman's testimony credible and persuasive regarding both the job offer letter sent to Claimant and the fact that Claimant did not return to work as requested. *Id.* at 12, FF No. 12(d).

Furthermore, the WCJ found that the description of injury contained in the NCP was materially incorrect and that Claimant did not suffer an ACL tear in her right knee due to the March 3, 2009, work incident, but, instead, she suffered a contusion. The WCJ further found that Employer raised "the error in the description of injury at the December 22, 2010 hearing, well before Claimant's medical expert testified on April 13, 2011 and well before the close of the record[.]" *Id.* at 12-13, FF No. 13. The WCJ then determined that Claimant had recovered from her work injury, *id.* at 13, FF No. 14, and that her lack of ability to perform the pre-sorter role was due to "her pre-existing, long standing [sic] and significant arthritic condition." *Id.*, FF No. 16. *See also id.*, FF No. 15. Finally, the WCJ found that "Claimant did not present any credible medical evidence that would have established that she suffered a low back injury or injury to her hips as a result of the March 3, 2009 work injury." *Id.*, FF No. 17.

Accordingly, the WCJ amended the NCP to reflect Claimant's injury as being a right knee contusion. The WCJ granted Employer's termination petition, denied Claimant's review petition and dismissed Employer's suspension petition as moot. On appeal, the Board affirmed.

Claimant then appealed to this Court, arguing, *inter alia*, that, because Employer had enough time to complete its investigation and uncover the correct nature of Claimant's injury before issuing the NCP, Employer was precluded from amending that document. Analyzing the relevant case law, specifically *Barna v.*

*Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 522 A.2d 22 (Pa. 1987), *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 465 A.2d 969 (Pa. 1983) and *County of Schuylkill v. Workmen's Compensation Appeal Board (Lawlor)*, 617 A.2d 46 (Pa. Cmwlth. 1992), we concluded that, prior to challenging or amending an NCP, an employer must initially prove that it promptly paid compensation before commencing or completing its investigation into a claimant's injuries and that if it did not do so, the NCP's description of injury is binding. We thus vacated the Board's order and remanded the case to the WCJ for further proceedings. In doing so, we specifically noted that the WCJ failed to make findings "regarding Employer's investigation, if any, into Claimant's injury at the time Employer issued the NCP or how Employer decided that Claimant sustained an ACL tear to her right knee." *Rodriguez I*, slip op. at 13.[5]

On remand, and directly relevant to the issue of Employer's investigation into the nature of Claimant's injury before issuing the NCP, Employer introduced the deposition testimony of Brieann Pavgouzas, a claims examiner and claims supervisor who was assigned to Claimant's case in September 2010. WCJ's Remand Decision circulated July 7, 2014, at 5, FF No. 11 and 11(a)-11(b). Ms. Pavgouzas had reviewed the file at Employer's request, including the records contained in the file in 2009, specifically a March 6, 2009, MRI report noting a probable ACL tear. *Id.*, FF No. 11(b). A TNCP was issued in March 2009, and, after receiving an office note by Claimant's then-treating doctor indicating

_____

[5] We also noted that, because of our disposition, we were not required to address Claimant's assertion that Employer failed to present unequivocal medical testimony that Claimant's continuing right knee problems were not causally related to her right knee contusion since the description of Claimant's work injury might change on remand. *Rodriguez I*, slip op. at 14 n.4.

10

that Claimant had a work-related injury resulting in a right ACL partial thickness tear, Employer withdrew the TNCP and issued a NCP in May 2009 describing the injury as a "right ACL tear." *Id.* at 5-6, FF No. 11(b), 11(c) and 11(d). Ms. Pavgouzas testified that nothing in the file indicated that Claimant's injury was not an ACL tear prior to acceptance of her claim. *Id.* at 6, FF No. 11(d). Finding the testimony of Ms. Pavgouzas "straightforward and credible[,]" *id.* at 16, FF No. 17(e), the WCJ determined: "At the relevant time the decision was made to issue the [NCP] and pay Claimant indemnity benefits Employer had promptly investigated the nature of Claimant's injury by reviewing an MRI report that had been submitted to Employer as well as an office note from Dr. Cook, Claimant's then treating doctor. Employer then promptly paid Claimant based upon this information…." *Id.*

> The WCJ also concluded, *inter alia*, that,
>
> as is clear from the credible and persuasive testimony of Robert Mauthe, M.D., Employer's investigation into the nature of the work injury could not truly be completed until Claimant underwent surgery. As Dr. Mauthe explained, which testimony this Judge credits, MRI's [sic] are not 100 percent accurate, and the physician cannot know whether an ACL is truly torn until surgery is performed.

*Id.* at 18, Conclusion of Law (CL) No. 3. The WCJ concluded as well "that it was not until receipt of the January 12, 2010 operative report that Employer's investigation had finally concluded – and revealed that the description of the work injury set forth on the [NCP] was incorrect"; that "[t]his fact was confirmed by the July 2010 IME of Dr. Perry"; and that all of the testifying doctors agreed that Claimant did not have an ACL tear of her right knee. *Id.*

11

Accordingly, the WCJ once again granted Employer's request to review the description of Claimant's injury set forth on the NCP. Moreover, the WCJ granted Employer's termination petition, granted Employer's suspension petition and denied Claimant's review petition. On appeal, the Board affirmed.

On further appeal to this Court, Claimant now argues that, while Employer may have made prompt payment of benefits to Claimant, it failed to timely complete its investigation into the nature of Claimant's injury because the investigation was not finished until July 13, 2010, the date of Dr. Perry's IME. Moreover, Claimant argues, Employer did not specifically challenge the NCP's accuracy, but did so only in the context of its termination petition, which was filed approximately twenty months after her work injury. Thus, Claimant asserts, the WCJ erred in determining that Employer could properly amend the description of Claimant's injury set forth in the NCP. We disagree.

As we explained in *Walter v. Workers' Compensation Appeal Board (Evangelical Community Hospital)*, 128 A.3d 367, 374 (Pa. Cmwlth. 2015), the question of whether an employer has been afforded "a fair opportunity to contest the corrective amendment is determined on a case-by-case basis by looking at the totality of circumstances. The employer must have the opportunity to contest a corrective amendment." Here, the WCJ found, based on the credited record evidence, that Employer did not complete its investigation until it received Dr. Canner's January 2010 operative report because, despite medical evidence existing in Claimant's file at the time Employer commenced paying benefits indicating nothing other than a right knee ACL tear, a physician cannot know if an ACL is torn until surgery has been performed. To this extent, this case differs from *County of Schuylkill*, relied upon by Claimant, where the insurer, despite adequate opportunity, did little to evaluate medically whether the claimant's injury was work related before issuing benefits. 617 A.2d at 48. Further, Employer sought to

12

amend the description of Claimant's injury in the NCP at the December 22, 2010, hearing, before any of the medical experts were deposed in this case. As previously noted, Claimant's counsel did not object to the amendment request. Finally, all of the medical experts—Claimant's and Employer's alike—agreed that Claimant did not suffer an ACL tear in the March 3, 2009, work incident. Thus, Claimant's first argument lacks merit.

Next, Claimant argues that unequivocal medical testimony failed to support the termination of her benefits. Specifically, Claimant asserts that both Dr. Mauthe and Dr. Perry acknowledged that she sustained a right knee contusion and that her knee problems were not disabling prior to her March 2009 work injury. Moreover, Claimant maintains, Dr. Perry conceded that certain of Claimant's surgical findings could have been related to her work injury, such that a termination of her benefits is unwarranted on this record. Once again, Claimant's argument fails.

The law is clear that an employer who seeks to terminate benefits after an NCP is issued has the burden of proving that any current disability is unrelated to a claimant's work injury. *Gumro v. Workmen's Comp. Appeal Bd. (Emerald Mines Corp.)*, 626 A.2d 94, 97 (Pa. 1993). While it is true that Dr. Perry's medical testimony, standing alone, may not support a termination of Claimant's benefits,[6]

---

[6] For example, Dr. Perry testified, *inter alia*:

> [C]an I say with 100 percent certainty that there isn't some traumatic basis for some [of Claimant's physical changes]? No, I can't, but to have all those things occur at once, in a joint where you see widespread osteoarthropathy … there is nothing in those changes that tells me that these are posttraumatic. Could they be? Yes. But are they objective signs of trauma…? No, they are not.

Notes of Testimony, Testimony of John Perry, M.D., February 9, 2011, at 12.

13

Dr. Mauthe's testimony, standing alone, clearly does. Dr. Mauthe thoroughly and unequivocally testified that it is his opinion within a "reasonable medical certainty that the patient had made a complete and full recovery from the right knee contusion sustained as a result of a fall on 3-3-09"; that "there's no evidence of any focal impairment as a result of any fall sustained on 3-3-09 and her current complaints are a direct result of her pre-existing longstanding arthritic condition"; and that he "[doesn't] see any substantial or material change as a result of the injury or the surgical procedure performed. So notwithstanding her subjective complaints, [he] see[s] no reason why she cannot function in the workplace." Notes of Testimony, Testimony of Robert W. Mauthe, M.D., April 26, 2011, at 22, 23 and 26. While the WCJ credited the testimonies of both Dr. Mauthe and Dr. Perry, he specifically stated that, to the extent they may differ, he adopted the opinions and testimony of Dr. Mauthe regarding "the factually correct nature of the injury Claimant sustained." WCJ's Remand Decision circulated July 7, 2014, at 18, CL No. 3. Of course, a WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *US Airways v. Workers' Comp. Appeal Bd. (Johnston)*, 713 A.2d 1192, 1195 (Pa. Cmwlth. 1998). Dr. Mauthe's testimony provides substantial, competent, unequivocal evidence that Claimant is no longer disabled from her work-related injury, and it is this medical testimony upon which the WCJ ultimately relied.

For all of the above reasons, we now affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

14

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Lorie Rodriguez,                 :
               Petitioner      :
                             :
                 v.            :    No. 1355 C.D. 2015
                             :
Workers' Compensation Appeal   :
Board (Pitney Bowes, Inc.),       :
             Respondent   :

**O R D E R**

AND NOW, this 4th day of May, 2016, the order of the Workers' Compensation Appeal Board is hereby affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge