**The PMA GROUP, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GEORGE NICKLES, KEYSTONE CONTRACTORS, INC. and State Worker's Insurance Fund), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 27, 2000.

Decided March 9, 2001.

Anthony J. Bilotti, Media, fo petitionr.

Wendy L. Slear, Philadelphia, for respondents.

Before SMITH, Judge, KELLEY, Judge, RODGERS, Senior Judge.

RODGERS, Senior Judge.

The PMA Group (PMA) petitions for review of the June 23, 2000 order of the Workers' Compensation Appeal Board (Board) that affirmed the May 15, 1998 decision of a workers' compensation judge (WCJ) substituting PMA as the responsible insurance carrier in this action. We affirm.

The following facts are summarized from the WCJ's findings. On June 30, 1993, George Nickles (Claimant) was injured in the course of his employment as a roofer with Keystone Contractors, Inc. (Employer). Claimant cracked a bridge in his mouth and suffered injuries to his hands, elbows and knees, but he did not seek medical treatment immediately and he continued working for approximately three months.

On July 29, 1993, Employer completed an occupational injury report (form LIBC–344–1) describing the incident and injuries and reflecting an injury date of *July 21, 1993*.[1] On September 1, 1993, Employer faxed a copy of this report to State Workers Insurance Fund (SWIF) and requested a file number to apply to Claimant's medical bills. SWIF provided insurance coverage to Employer effective July 1, 1993, after PMA terminated coverage effective June 30, 1993.

SWIF set up the claim as "medical only," meaning it involved no lost wages, and medical bills submitted were reviewed to insure they were causally related to the injury. On October 25, 1993, SWIF received a "change of status" notice from Employer, indicating that Claimant had stopped working as of September 24, 1993. SWIF received a statement from Employer indicating that the claim was not disputed and issued a notice of compensation payable (NCP) dated November 12, 1993, setting forth a weekly compensation rate of $475 and describing the injury as "multiple body parts." (R.R. 1a.) SWIF did not, at any time, interview Claimant, his co-workers, any witnesses to the incident or any of Claimant's medical providers with respect to the claim.

Approximately nine months later, Employer's insurance broker informed Mark Sokoloff, Employer's vice-president of finance, that a report on Claimant's claim reflected a loss of $140,000. Because this figure would adversely affect the cost of Employer's insurance, Mr. Sokoloff decided to take a closer look at the matter. Conversations with other employees led Mr. Sokoloff to conclude that Claimant's injury occurred on a date earlier than July 21, 1993. Mr. Sokoloff also received a letter from an attorney representing Claimant in a civil action, indicating that the date of injury had been stipulated as June 30, 1993, in the civil case. In June of 1994,

---

1. The confusion concerning the date of injury stems at least in part from Claimant's admittedly poor memory and his habit of inconsistently guessing at the date of his injury when reporting it to Employer and various medical providers.

after gathering various invoices and records, Mr. Sokoloff concluded that June 30, 1993 was the correct date of injury.

Mr. Sokoloff informed Employer's insurance broker of the mistake and, in July of 1994, Employer's broker informed PMA of the injury. On August 4, 1994, PMA issued a notice of compensation denial and began investigating the claim. On August 9, 1994, Mr. Sokoloff notified SWIF that the correct injury date was not as previously reported, but was June 30, 1993, at which time PMA was Employer's insurer. On October 3, 1994, Mr. Sokoloff submitted to SWIF a corrected copy of the injury report, reflecting an injury date of June 30, 1993. On October 18, 1994, SWIF requested additional information and documentation to substantiate the change in date, which Employer sent to SWIF on November 28, 1994.

On March 2, 1995, SWIF filed a review petition,[2] seeking to have PMA reimburse SWIF for all benefits paid and assume liability for future compensation payable. On May 5, 1995, SWIF filed a petition to join PMA as an additional party. PMA filed an answer denying the allegations and asserting that both petitions were barred due to SWIF's failure to timely investigate the date of injury.

The petitions were consolidated and, after hearings, the WCJ found that the date of Claimant's injury was June 30, 1993. The WCJ rejected PMA's contentions that the petitions were barred by laches or estoppel based on SWIF's alleged delay in investigating the claim. The WCJ concluded that the NCP dated November 12, 1993 was materially incorrect, that SWIF was entitled to have that NCP set aside, and that PMA is liable for compensation related to Claimant's injury. The Board affirmed the WCJ's decision.

On appeal to this Court,[3] PMA argues that, because SWIF did not act with due diligence to investigate the date of injury, equity demands that SWIF should remain the responsible insurer. Citing *Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 513 Pa. 518, 522 A.2d 22 (1987), *Beissel v. Workmen's Compensation Appeal Board*, 502 Pa. 178, 465 A.2d 969 (1983), and *Cedar Farms, Inc. v. Workmen's Compensation Appeal Board (Santiago)*, 665 A.2d 1326 (Pa.Cmwlth.1995), *appeal denied*, 544 Pa. 662, 676 A.2d 1202 (1996), PMA contends that SWIF did not commence payments to Claimant in a prompt manner so as to excuse its failure to complete an investigation prior to issuing the NCP.[4]

2. Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 771, provides that a WCJ may, at any time, review and modify or set aside a notice of compensation payable, if it is proved that the notice of compensation payable was in any material respect incorrect.

3. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

4. Because the Act imposes upon employers the duty to promptly commence payment of benefits, an employer will be allowed to seek relief under Section 413(a) where payments are begun prior to the commencement or completion of the employer's investigation into the cause of the claimant's injuries. *Cedar Farms*. However, where an employer has the opportunity and does investigate the cause of the employee's disability, the filing of an NCP constitutes an admission of liability that cannot later be contradicted. *Beissel* .

We note that PMA has not accurately recited the facts. For example, PMA states that the injury was reported by Employer on July 29, 1993, that SWIF did not issue the NCP until November 12, 1993, and, therefore, SWIF violated the Act by delaying payments that were due. However, the record establishes that SWIF did not receive Employer's injury report until September 1, 1993, Employer did not inform SWIF that the claim included lost wages until October 25, 1993 (more than a month after the fact), and SWIF paid medical bills as they were submitted.

The *Barna, Beissel,* and *Cedar Farms* cases involved a challenge concerning the work-relatedness of the claimant's injuries and, therefore, the issue in dispute was the viability of the claim. Where, as here, the issue concerns the shifting of liability from one carrier to another for an admittedly compensable claim, the rationale of these cases (knowledge of the facts and opportunity to investigate) is not controlling. *Birmingham Fire Ins. Co. v. Workmen's Compensation Appeal Board (Kennedy),* 657 A.2d 96 (Pa.Cmwlth.1995); *Sunset Golf Course v. Workmen's Compensation Appeal Board (Department of Public Welfare),* 141 Pa.Cmwlth.103, 595 A.2d 213 (1991), *appeal denied,* 529 Pa. 654, 602 A.2d 863 (1992); *Swartz v. Workmen's Compensation Appeal Board (Dutch Pantry),* 117 Pa.Cmwlth.47, 543 A.2d 201 (1988), *appeals denied,* 522 Pa. 580, 559 A.2d 40 (1989) and 522 Pa. 581, 559 A.2d 41 (1989).

In *Swartz,* Aetna Insurance Company (Aetna) paid benefits to a claimant pursuant to an NCP and concluded payments with the signing of a final receipt. About a year and one-half later, the claimant sought reinstatement and, in response, Aetna filed a review petition asserting that Fireman's Fund was the responsible carrier at the time of the claimant's injury. The Board upheld the referee's decision to set aside the final receipt, reinstate benefits and grant the review petition, substituting Fireman's Fund as the responsible carrier. This Court affirmed, holding that equitable estoppel did not preclude Aetna from challenging the mistaken determination that it was the responsible carrier and that Section 413 of the Act authorized the referee to correct the NCP by substituting Fireman's Fund as the responsible insurer.

Relying on *Swartz,* the *Sunset Golf Course* court explained that:

> *Barna* and *Beissel* deal exclusively with relitigation of the question of whether an injury is work-related. In the case before us, there is no dispute that the original injuries suffered by Claimant are work related. The unresolved question is which entity ... was Claimant's employer. *Because the cause of Claimant's disability is not contested,* Respondents must be permitted to seek relief under Section 413 of the Act.

*Sunset Golf Course,* 595 A.2d at 216 (emphasis added). In *Birmingham,* the court relied on these earlier decisions and the plain language of Section 413 to reach a similar result.

In this case, the cause of Claimant's disability is not contested. Following *Birmingham, Sunset Golf Course,* and *Swartz,* we conclude that the WCJ was not required to consider the timeliness or the manner in which SWIF handled this claim in order to exercise the authority provided by Section 413 of the Act to review and correct mistakes.

Accordingly, we affirm.

## *ORDER*

NOW, *March 9, 2001,* the order of the Workers' Compensation Appeal Board, at No. A98–2308, dated June 23, 2000, is affirmed.