# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Reading Anthracite Company, | : | CASES CONSOLIDATED |
|       Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Molly Oxenrider, West Spring | : | |
| Energy LLC, Rockwood Casualty | : | |
| Insurance Company and State | : | |
| Workers' Insurance Fund (Workers' | : | |
| Compensation Appeal Board), | : | No. 120 C.D. 2023 |
|       Respondents | : | |
| | : | |
| West Spring Energy, LLC, | : | |
|       Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Molly Oxenrider, Rockwood Casualty | : | |
| Insurance Company, Reading | : | |
| Anthracite Coal Company and State | : | |
| Workers' Insurance Fund (Workers' | : | |
| Compensation Appeal Board), | : | No. 121 C.D. 2023 |
|       Respondents | : | |
| | : | |
| Rockwood Casualty Insurance | : | |
| Company, | : | |
|       Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Molly Oxenrider, West Spring | : | |
| Energy, LLC, Reading Anthracite | : | |
| Coal Company and State Workers' | : | |
| Insurance Fund (Workers' | : | |
| Compensation Appeal Board), | : | No. 126 C.D. 2023 |
|       Respondents | : | |

State Workers' Insurance Fund,           :
                    Petitioner           :
                                         :
                v.                       :
                                         :
Molly Oxenrider, West Spring             :
Energy, LLC, Reading Anthracite          :
Coal Company and Rockwood                :
Casualty Insurance Company              :
(Workers' Compensation                   :
Appeal Board),                           :   No. 170 C.D. 2023
                    Respondents          :   Argued: May 7, 2024


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
JUDGE COVEY                              FILED: June 11, 2024


West Spring Energy, LLC (West Spring), Reading Anthracite Coal Company (RAC), and Rockwood Casualty Insurance Company (Rockwood) (collectively, Petitioners) petition this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) January 12, 2023 order affirming the WC Judge's (WCJ) decision that denied West Spring's Petition to Review Compensation Benefits (Review Petition) and Petition for Joinder of Additional Defendant (Joinder Petition) (collectively, Petitions). Petitioners present three issues for this Court's review: (1) whether the Board erred when it affirmed the WCJ's denial of the Petitions with respect to Andrew Oxenrider's (Decedent) employment relationship; (2) whether the Board erred by affirming the WCJ's decision, wherein, the WCJ failed to find that Decedent was a borrowed servant; and (3) whether the State Workers' Insurance Fund (SWIF), if ultimately determined to be the proper carrier, is required to reimburse Rockwood for the amount it paid

2

Decedent's widow, Molly Oxenrider (Widow), and for any attorney's fees. After review, this Court affirms.

West Spring and RAC conduct coal mining operations.[1] West Spring employed Decedent as an equipment operator, but scheduled him to be laid off. RAC needed a bulldozer operator for a new project at one of RAC's refuse banks, the Oak Hill facility (Oak Hill), which RAC owns in Pottsville, Pennsylvania. Decedent was directed to report to RAC for a bulldozer operator assignment. He reported to Oak Hill on July 13, 2017. On July 25, 2017, Decedent was fatally injured while operating a bulldozer on a refuse bank at Oak Hill.

On September 12, 2017, West Spring, through its insurer, Rockwood, filed a Notice of Temporary Compensation Payable (NTCP) acknowledging that Decedent sustained a fatal crushing injury during the course and scope of his employment on July 25, 2017. West Spring acknowledged that "[Decedent']s body was discovered on the ground behind a bulldozer he was operating an [sic] it is apparent that he was run over by the tracks of the[ ] machine." Reproduced Record (R.R.) at 384a. Pursuant to the NTCP, West Spring began paying Decedent's WC benefits to Widow at the weekly rate of $665.72 beginning on July 25, 2017. On October 24, 2017, the Bureau of WC issued a Notice of Conversion of Temporary Compensation Payable to Compensation Payable (Conversion Notice) converting West Spring's NTCP to a Notice of Compensation Payable (NCP). *See* R.R. at 156a.

On February 9, 2018, RAC's insurer, SWIF, filed a Notice of Compensation Denial (NCD) acknowledging Decedent's July 25, 2017 fatal crush injury, and stating that "[Decedent] was operating a bulldozer, when the bulldozer overturned and he fell out, resulting in the injury." R.R. at 991a. SWIF issued the

---

[1] West Spring and RAC are separate and distinct corporate entities. However, RAC has a 51% ownership interest in West Spring. West Spring was formed to remove and mine coal at RAC's West Spring Slope property, a mine owned by RAC.

NCD on the basis that "no policy [was] in effect on the date of the accident." R.R. at 992a. On February 14, 2018, SWIF issued another NCD stating that "[Decedent] was not an employee of [RAC] at the time of th[e] injury."[2] R.R. at 994a.

On December 12, 2019, Rockwood's claims representative entered into an Agreement with Widow acknowledging therein that Decedent sustained fatal injuries to his head, thorax, and left leg when he was run over by the track of a bulldozer on July 25, 2017.

On February 21, 2020, the United States (U.S.) Secretary of Labor filed a Motion to Approve Settlement (Settlement) between the Mine Safety and Health Administration (MSHA) and RAC. Pursuant to the Settlement, MSHA sought civil penalties for RAC's six citations for violation of the Federal Mine Safety and Health Act of 1977[3] in connection with Decedent's death. The Settlement reflected that Decedent was working under RAC's direct control and supervision at the time of his death. On February 21, 2020, U.S. Department of Labor Administrative Law Judge

---

[2] SWIF states in its brief to this Court:

> [O]n December 21, 2018, . . . [W]idow had sued, *inter alia*, RAC in the Philadelphia County Court of Common Pleas. ([*See*] R.[R. at] 2060a-2094a). [West Spring], which was holding itself out as Decedent's employer at the time, was not a named party in the third-party lawsuit. ([*See*] R.[R. at] 2060a-2094a). Witnesses in the third-party lawsuit . . . testified as late as September 2020, that Decedent was an employee of [West Spring]. ([*See*] R.[R. at] 1920a-1997a). Claim notes show that RAC's general liability insurance carrier, Chubb, filed a declaratory judgment action disclaiming coverage for the third-party claim - an action that, if successful, could leave RAC uninsured and directly exposed in the third[-]party case. ([*See*] R.[R. at] 2046a-2056a). In addition, RAC is presently in litigation in Schuylkill County and before the Pennsylvania Board of Claims based on denied coverage for RAC in the third[-]party case by Federal Insurance Company, Lexington Insurance Company, and SWIF. ([*See*] R.[R. at] 1306a-1853a).

SWIF Br. at 4.

[3] 30 U.S.C. §§ 801-966.

4

(ALJ) Alan G. Paez (ALJ Paez) approved the proposed Settlement and ordered RAC to pay a civil penalty of $70,359.50 to MSHA within 30 days.

On July 8, 2020, West Spring filed the Joinder Petition seeking to join RAC as an additional employer and SWIF as an additional insurer. Therein, West Spring alleged that RAC trained Decedent, controlled Decedent, and determined the manner in which Decedent performed the work. West Spring additionally stated that Decedent completed RAC timecards. Rockwood and SWIF filed timely answers denying the material allegations in the Joinder Petition.

On July 15, 2020, West Spring filed the Review Petition alleging:

> The [NCP] and the Agreement . . . issued by Rockwood . . . contain[s] a material mistake of fact as to [Decedent's] employer. West Spring . . . was not [Decedent's] [e]mployer on the date of the injury. In fact, on July 13, 2017, [Decedent] became an employee of [RAC] where he worked until the date of his death on July 25, 2017. As of July 13, 2017, [RAC] selected [Decedent], had the right and power to remove [Decedent], the power to direct the manner of performance, and the power to control [Decedent]. For this reason[,] West Spring . . . has also filed [the] Joinder Petition . . . which is currently pending . . . .

R.R. at 15a. Rockwood and SWIF filed timely answers denying the material allegations in the Review Petition, namely denying that Decedent was RAC's employee when his fatal injury occurred.

On November 19, 2020, Widow and Rockwood executed a Stipulation of Facts (Stipulation), acknowledging that on July 25, 2017, Decedent sustained fatal injuries in the course and scope of his employment after he was crushed under the track of a bulldozer. The parties further stated in the Stipulation that, at the time of his death, Decedent was survived by Widow and three minor dependents. The Stipulation provided that Widow was entitled to a dower netting $54,331.09 following calculation of Rockwood's credit for overpayment and Decedent's

5

attorney fee of 20% of the dower.[4]  The parties agreed that Rockwood would pay ongoing fatal claim benefits to Decedent's three dependent children in accordance with the WC Act[5] (Act).  The parties further concurred that the Stipulation resolved in its entirety a separate Review Petition that Widow filed on October 14, 2020.  The Stipulation did not affect the remaining Petitions pending before the WCJ.

In support of its Review Petition and Joinder Petition, West Spring submitted the deposition testimony of RAC's General Manager Frank Derrick, West Spring's Foreman (and former RAC employee) Paul Vuksta, RAC Executive Secretary Deborah Fehr (Fehr), and SWIF Claims Adjuster Charles Moran.  RAC submitted the deposition testimony of RAC Vice President of Safety and Compliance Rick Muntone (Muntone), and Mark Pishock, who is simultaneously RAC's Vice President **and** West Spring's General Manager.  Rockwood submitted the deposition testimony of its Vice President of Claims Rick Tipton (Tipton).

On September 13, 2021, the WCJ denied West Spring's Joinder and Review Petitions.  The WCJ found that West Spring failed to meet its burden of proving that there was either a material mistake of fact at the time it issued its NCP, or that there was insufficient time to investigate the claim before West Spring accepted it.  In addition, the WCJ found that an ongoing employment relationship existed between West Spring and Decedent at the time of Decedent's death on July 25, 2017.  The WCJ also found that Rockwood shall remain the carrier liable for the fatal claim, subject to the Agreement as modified by the Stipulation.  The parties filed appeals and cross-appeals from the WCJ's Decision to the Board.

On January 12, 2023, the Board affirmed the WCJ's decision.  The Board explained that "the WCJ did not err in finding that [West Spring] failed to meet its burden of proving that there was either a material mistake of fact at the time

_____

[4] Widow had remarried on August 15, 2020.
[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

6

its NCP was issued, or that there was not sufficient time to investigate the claim before it was accepted." Specifically, the Board concluded:

> [West Spring] and [Rockwood] failed to properly investigate the claim at the time it issued its initial NTCP or at the time the NTCP converted to an NCP. This included [West Spring's] and [Rockwood's] failure to investigate the issue of Decedent's employer at the time of his death.[6] Therefore, the WCJ did not err in determining

---

[6] The Board observed:

> The WCJ found that,
>
>> [h]ere, it is clear to this [WCJ] that both West Spring . . . and Rockwood . . . had more than sufficient time to investigate the accident that caused the death of Decedent. The issue of who employed Decedent at the time of death was identified and vetted by the Rockwood [c]laims [a]djuster during the time the [NTCP] was issued and the date the Conversion Notice was issued. There was communication with [] Muntone who identified Decedent as an employee of West Spring . . . . Then, more than two years after the accident, i.e., on December 12, 2019, the [c]laims [r]epresentative from Rockwood . . . , on behalf of its insured West Spring . . . , entered into [the] Agreement . . . with [W]idow. This document was signed by both the Rockwood [c]laims [r]epresentative and [Widow] . . . . In addition, the evidence presented in this dispute, which was accepted as credible by this [WCJ], supports a finding that Decedent remained on the payroll of West Spring . . . up to the date of death and that there had been no determination as to whether Decedent would be permanently transferred to . . . [RAC]. Clearly there was an ongoing employment relationship between Decedent and West Spring . . . at the time of his death. . . .[] The credible evidence also supports a finding that at the time the accident was reported to Rockwood . . . , the person responsible for reporting injuries and claims for work injuries, a . . . [RAC] employee, considered Decedent an employee of West Spring . . . .

7

that [West Spring] failed to meet its burden of proving that there was either a material mistake of fact at the time its NCP was issued, or that there was not sufficient time to investigate the claim before it was accepted. [West Spring] is not entitled to set aside its NCP[,] wherein it accepted liability for Decedent's work incident on July 25, 2017, and [West Spring] and [Rockwood] therefore remain liable for the fatal claim related thereto. Consequently, we determine no error.

R.R. at 2196a-2197a (footnote omitted).

West Spring, Rockwood, and RAC each appealed to this Court[7] and SWIF filed a cross-petition for review. On July 28, 2023, this Court ordered that the appeals be consolidated.[8]

Petitioners first contend that the Board erred when it affirmed the WCJ's denial of the Petitions with respect to Decedent's employment relationship. SWIF responds that the statutory language and case law support the WCJ's decision.

Section 413(a) of the Act states:

A [WCJ] **may**, at any time, **review and modify or set aside a[n NCP]** and an original or supplemental agreement or upon petition filed by either party with the [D]epartment [of Labor and Industry], or in the course of the proceedings under any petition pending before such

---

(Conclusion of Law 5).

R.R. at 2194a-2195a.

[7] This Court docketed West Spring's appeal at Pa. Cmwlth. No. 121 C.D. 2023, Rockwood's appeal at Pa. Cmwlth. No. 126 C.D. 2023, RAC's appeal at Pa. Cmwlth. No. 120 C.D. 2023 and SWIF's appeal at Pa. Cmwlth. No. 170 C.D. 2023.

[8] This Court's review "is limited to determining whether the findings are supported by substantial evidence and whether there has been an error of law or an abuse of discretion." *Folk v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 802 A.2d 1277, 1278 (Pa. Cmwlth. 2002). "[A]n abuse of discretion is not merely an error of judgment, and . . . includes instances of the law being overridden or misapplied." *In re Private Complaint Filed by Luay Ajaj*, 288 A.3d 94, 121 (Pa. 2023). Thus, "[r]eview for abuse of discretion must include a review for errors of law. This is because an error of law amounts to an abuse of discretion." *In re Appeal of Silverman*, 90 A.3d 771, 784 (Pa. Cmwlth. 2014).

8

[WCJ], **if it be proved that such [NCP] or agreement was in any material respect incorrect**.

77 P.S. § 771 (emphasis added).

The Pennsylvania Supreme Court has held:

[T]he language of Section 413(a) [of the Act] is discretionary - a [WCJ] "may" at any time correct a[n NCP]. 77 P.S. § 771. The Legislature therefore contemplated that **there are circumstances in which it would be inappropriate for a [WCJ] to direct a corrective amendment** of a[n NCP], including in a termination proceeding.

*Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 582 (Pa. 2009) (emphasis added).

The Act imposes upon employers the duty to promptly commence payment of compensation and the cause of an employee's disability may not always be obvious. Where . . . an employer promptly commences payment of compensation prior to commencement or completion of investigation into the cause of [the] claimant's injuries and later determines that the claimant's disability was never work-related, in the absence of evidence of repeated contests of the cause of the disability such as occurred in *Beissel* [*v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 465 A.2d 969 (Pa. 1983)], the employer must be permitted to seek relief. This rule promotes the early payment to injured employees[,] which is clearly contemplated by the Act[,] while it preserves the legitimate expectation that an employer's liability under the Act for work-related injuries not become a general disability insurance policy.

*Barna v. Workmen's Comp. Appeal Bd. (Jones & Laughlin Steel Corp.)*, 522 A.2d 22, 24 (Pa. 1987) (footnote omitted).

In *Gunter v. Workers' Compensation Appeal Board (City of Philadelphia)*, 825 A.2d 1236 (Pa. 2003), the Pennsylvania Supreme Court recounted that it had

further clarified [Section 413[(a)] of the Act] in *Waugh v. Workmen's Compensation Appeal Board (State Workmen's Insurance Fund and Blue Grass Steel)*, . . . 737 A.2d 733 ([Pa.] 1999). There, the claimant, an employee of Blue Grass Steel [(Blue Grass)], a Kentucky company, suffered serious head injuries in a [25-]foot fall from a building at a building site in the [s]tate of Indiana. At the time of the fall, Blue Grass did not maintain [WC] insurance in Indiana but did maintain such coverage in Pennsylvania with [SWIF], but only for workers who were injured while either working or residing in Pennsylvania. The claim form completed by [SWIF] when it received notice of the claimant's injury listed that the claimant resided in Pennsylvania at the time of the injury. Based upon the information supplied by Blue Grass, [SWIF] issued an NCP listing the claimant's address as a Kentucky address and began paying weekly benefits to [the] claimant as well as paying his medical bills. [SWIF] mailed the claimant's benefit checks to the Kentucky address listed on the NCP. Four months after it began paying benefits to the claimant, [SWIF] filed a petition for review seeking to set aside the NCP because it contained a material mistake of fact.

The WCJ refused to set aside the notice, finding that [SWIF] had sufficient information at the time it issued the notice to question whether the claimant was a Pennsylvania resident. On appeal, the [Board] reversed the WCJ's decision, holding that the NCP was issued on the erroneous assumption that the claimant was a Pennsylvania resident and that [SWIF] took immediate steps to set aside the NCP once it became apparent that the assumption regarding the claimant's residence was erroneous. The Commonwealth Court reversed the [Board's] decision because it determined that, even though misrepresentations were made, [SWIF] had failed to meet its burden of proof because it did not present the testimony of the claims investigator who issued the NCP.

Th[e Pennsylvania Supreme] Court granted review to address whether the insurer was entitled to set aside the NCP on grounds that the employer's intentional misrepresentation of the claimant's residence was a material mistake of fact. Th[e *Waugh*] Court held that the insurer was so entitled, reasoning as follows:

10

Here, the NCP was incorrect in a material respect--namely, it was incorrect in that it acknowledged the existence of a legal payment obligation for claimant's injury when, in fact, no such payment obligation existed, and when both employee and employer were aware that no such payment obligation existed but falsely conveyed misinformation so that [SWIF] would believe otherwise. We conclude that this sort of mistake is clearly contemplated by the language of Section 413[(a)] of the Act. To conclude otherwise would be to impute an absurd result to the Legislature, and this we will not do. . . . In our view, we would necessarily condemn this legislative enactment as absurd if we interpreted the enactment to allow an employee to wrongfully obtain [WC] benefits by making material misrepresentations on collateral documents that convey the impression that the employee is eligible for benefits when he is not. An NCP acknowledging liability pursuant to such material misrepresentations constitutes, for purposes of Section 413[(a) of the Act], a material mistake of fact--one that this Court will not favor with its judicial imprimatur.

*Waugh*, 737 A.2d at 737-38 (citations omitted).

*Waugh* clearly recognizes that the issuance of an NCP does not preclude an employer from seeking to set aside the notice based upon a material mistake of fact.

*Gunter*, 825 A.2d at 1242-43.

West Spring asserts that the WCJ and the Board, "failed to consider . . . *Barna* . . . or the controlling decision of this Court in *Sunset Golf Course v. [Workmen's Compensation Appeal Bd.] (Dep[artment] of Public Welfare)*, 595 A.2d 213 ([Pa. Cmwlth.] 1991)."[9] West Spring Br. at 17. West Spring further cites *Birmingham Fire Insurance Co. v. Workmen's Compensation Appeal Board (Kennedy)*, 657 A.2d 96 (Pa. Cmwlth. 1995), and *PMA Group v. Workers'*

---

[9] Notably, the Board did consider *Barna* and distinguished the facts in *Barna* and in *Waugh* from those before it in the instant matter. *See* R.R. at 2195a-2197a.

*Compensation Appeal Board (Nickles)*, 768 A.2d 917 (Pa. Cmwlth. 2001), to support its position.

In *Sunset Golf Course*, the claimant worked for the Department of Public Welfare (DPW), but DPW assigned him to work as a laborer for Sunset Golf Course (Golf Course). The claimant was injured in the course of his employment and the claimant and DPW entered into a compensation agreement. Pursuant to the compensation agreement, DPW's insurer agreed to pay the claimant total disability benefits. Thereafter, the claimant filed a claim petition and DPW filed a petition to review the compensation agreement and a petition to join Golf Course, alleging therein that Golf Course was the claimant's employer. The Board determined that Golf Course was the claimant's actual employer. Golf Course appealed, contending that DPW should not be permitted to argue that it was not the claimant's employer since it had accepted liability over one year prior. Golf Course argued that DPW could not deny that it was the responsible employer, citing Pennsylvania Supreme Court cases holding that an employer could not relitigate the issue of whether the cause of a claimant's injury was work related after the employer began paying WC benefits. The *Sunset Golf Course* Court distinguished Golf Course's cited cases as pertaining "exclusively with relitigation of the question of whether an injury [was] work[]related[,]" noting that "[i]n the case before us, there [was] no dispute that the original injuries suffered by [the claimant] [were] work[]related." *Id*. at 216.

The *Sunset Golf Course* Court reasoned:

> The decision of the Board in the instant case is consistent with *Swartz v. Workmen's Compensation Appeal Board (Dutch Pantry)*, . . . 543 A.2d 201 ([Pa. Cmwlth.] 1988). In *Swartz*, Aetna Insurance Company [(Aetna)] paid compensation benefits to an employee pursuant to a compensation agreement, which payments concluded with the signing of a final receipt. Nearly a year and one-half later, the employee sought reinstatement of the compensation agreement. In response, Aetna filed a

12

petition to review the compensation agreement, asserting that [the] Fireman's Fund was the employer's insurance carrier at the time of the employee's original injury rather than Aetna, which had entered into the original compensation agreement. In *Swartz*[,] the Board held that the wrong insurance carrier paid the original claim and substituted [the] Fireman's Fund as the responsible insurance carrier. Pursuant to [S]ection 413[(a)] of the Act, the referee[10] **had the authority** to modify the existing compensation agreement which was incorrect. Consequently, this [C]ourt affirmed.

We conclude the instant case is controlled by *Swartz* and that, under [S]ection 413[(a)] of the Act, the referee **had the authority** to substitute [the p]etitioners for [the r]espondents.

*Sunset Golf Course*, 595 A.2d at 216 (emphasis added).

Similarly, in *Birmingham*, a referee set aside an NCP in which another insurer erroneously acknowledged the claimant's injury as a new injury rather than a recurrence of a previous work-related injury. This Court held that "the referee was well **within his authority** in modifying the [NCP] 15 months after its issuance to correctly reflect that [the employer's former insurer], not [the employer's present insurer], was the insurer responsible for compensating [the] claimant for the recurrence of his . . . work-related injury." *Id*. at 99-100 (emphasis added).

In *PMA Group*, a WCJ ordered an NCP be amended to include the correct date of injury, which, based on the applicable coverage period, rendered a secondary carrier liable for compensation. The *PMA Group* Court concluded: "Following *Birmingham*, *Sunset Golf Course*, and *Swartz*, we conclude that the WCJ **was not required to consider the timeliness or the manner in which SWIF handled this claim** in order to exercise the authority provided by Section 413(a) of the Act to review and correct mistakes." *PMA Grp.*, 768 A.2d at 920 (emphasis added). The above-referenced cases reflect that where there is no dispute that the

---

[10] Prior to the 1996 amendments to the Act, WCJs were referred to as referees.

13

original injuries suffered by a claimant are work related, and where the question is which entity was the claimant's employer, a petitioner may request modification, and the WCJ <u>need not</u> consider the timeliness or the manner in which the employer or insurer handled the claim. However, contrary to Petitioners' argument, none of the aforementioned cases *prohibit* a WCJ from considering circumstances, including the timeliness and the manner in which the insured handled the claim, in exercising his or her discretion when determining whether to permit a corrective amendment where the issue is the identity of the claimant's employer.

Herein, the WCJ found:

(a) [d]uring the time Decedent was at the Oak Hill site, he was under the payroll of West Spring; (b) Decedent's employment was never formally switched from West Spring to [RAC]; (c) Decedent maintained his membership in the same union he was in while at West Spring when he started working at the Oak Hill site, and he was still listed as a West Spring employee by the union and union dues were withheld from his West Spring paycheck; (d) [i]t was the practice of the company to report claims to the company that an employee was working for, i.e., the company from which they were collecting their paycheck; (e) Decedent was not placed on the [RAC] payroll when he moved to the Oak Hill site because it was not determined whether his position would be permanent or if he was on the recall panel list for West Spring; and (f) there had never been any billing from West Spring to [RAC] for the services of Decedent, even as of the date[] Fehr testified. From these factors, this [WCJ] finds that [] Decedent maintained an employment relationship with West Spring up to the date of his death. [RAC] never had Decedent on its payroll, nor had it been billed by West Spring for the services Decedent had performed. This [WCJ] finds that this is not inconsistent with the testimony of [] Tipton and the conclusions reached by [Rebecca] Cramer [(Cramer), the assigned Claims Representative] at Rockwood[,] after the claim was investigated and the issue of who the proper employer was at the time of the accident was vetted.

14

R.R. at 2388a-2389a.  Further, the WCJ explained:

> The issue of who employed Decedent at the time of death was identified and vetted by the Rockwood Claims Adjuster during the time the [NTCP] was issued and the date the Conversion Notice was issued. There was communication with [] Muntone who identified Decedent as an employee of West Spring.  Then, more than two years after the accident, i.e., on December 12, 2019, the Claims Representative from Rockwood, on behalf of its insured West Spring, entered into [the Agreement].  This document was signed by both the Rockwood Claims Representative and the [W]idow of Decedent.  In addition, the evidence presented in this dispute, which was accepted as credible by this [WCJ], supports a finding that Decedent remained on the payroll of West Spring up to the date of death and that there had been no determination as to whether Decedent would be permanently transferred to [RAC].  Clearly, there was an ongoing employment relationship between Decedent and West Spring at the time of his death.  This [WCJ] noted that [RAC] never billed West Spring for the services rendered by Decedent, and therefore, incurred no cost for his services.  The credible evidence also supports a finding that at the time the accident was reported to Rockwood, the person responsible for reporting injuries and claims for work injuries, a [RAC] employee, considered Decedent an employee of West Spring.

R.R. at 2391a-2392a.  The WCJ concluded that Petitioners did not carry their burden that there was a material mistake of fact as to the identity of Decedent's employer.

With respect to whether Petitioners had sufficient time to investigate the identity of Decedent's employer, the WCJ found:

> Tipton testified that there was a document prepared by [] Cramer, the Claims Representative responsible for this file at the time of the accident and for a period of time thereafter, outlining her investigation strategy, part of which was to confirm that Decedent was an employee of West Spring and not [RAC].  [] Tipton credibly testified that this was done because of the known relationship between West Spring and [RAC] and Rockwood did not

15

provide coverage for [RAC]. This [WCJ] specifically finds that Rockwood did, in fact, take the time to investigate this issue. . . . The claim notes support the finding that there was communication between the Claims Representative and [] Muntone on the issue of who was Decedent's employer at the time of the accident and the representation by [] Muntone that Decedent was employed by West Spring. This [WCJ] finds that the testimon[ies] of [] Tipton and [] Muntone are consistent on this point, with the follow up done by [] Cramer confirmed in the claim notes. In addition, [] Tipton testified that as a result of his review of the file materials, he came to the same conclusion that [] Cramer had come to, i.e., that Decedent was an employee of West Spring, and that Rockwood had properly accepted the fatal claim. . . . This [WCJ] also weighed the fact that Rockwood issued a[n NTCP] on September 12, 2017, almost two months after the accident, which was permitted to convert to a[n NCP]. Moreover, this [WCJ] also placed significant weight upon the fact that the Rockwood Claims Representative subsequently entered into an Agreement . . . with [Widow], which was dated December 12, 2019, i.e., more than two years after the accident. To the extent that West Spring or Rockwood may assert that it, or they, either did not investigate the claim sufficiently before acceptance of liability, or that there was not sufficient time to determine the relevant law applicable to this claim, this [WCJ] finds any such assertion to be without merit, given the fact that the issue of who employed Decedent at the time of the accident was identified by the Claims Representative early in this claim, it was vetted, and a decision was made to accept the claim.

R.R. at 2388a. The WCJ's findings are supported by substantial record evidence.

Based on the above, this Court cannot hold that the WCJ erred or abused its discretion by denying the Petitions with respect to Decedent's employment relationship. Accordingly, the Board properly affirmed the WCJ's decision.[11]

---

[11] Given the disposition of the first issue, this Court need not reach the remaining issues.

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Reading Anthracite Company,<br>Petitioner | : | CASES CONSOLIDATED |
| | : | |
| v. | : | |
| | : | |
| Molly Oxenrider, West Spring<br>Energy LLC, Rockwood Casualty<br>Insurance Company and State<br>Workers' Insurance Fund (Workers'<br>Compensation Appeal Board),<br>Respondents | : | No. 120 C.D. 2023 |
| | : | |
| West Spring Energy, LLC,<br>Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Molly Oxenrider, Rockwood Casualty<br>Insurance Company, Reading<br>Anthracite Coal Company and State<br>Workers' Insurance Fund (Workers'<br>Compensation Appeal Board),<br>Respondents | : | No. 121 C.D. 2023 |
| | : | |
| Rockwood Casualty Insurance<br>Company,<br>Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Molly Oxenrider, West Spring<br>Energy, LLC, Reading Anthracite<br>Coal Company and State Workers'<br>Insurance Fund (Workers'<br>Compensation Appeal Board),<br>Respondents | : | No. 126 C.D. 2023 |

State Workers' Insurance Fund,     :
                      Petitioner    :
                                    :
           v.                       :
                                    :
Molly Oxenrider, West Spring        :
Energy, LLC, Reading Anthracite     :
Coal Company and Rockwood           :
Casualty Insurance Company          :
(Workers' Compensation              :
Appeal Board),                      :   No. 170 C.D. 2023
                      Respondents    :

# O R D E R

AND NOW, this 11th day of June, 2024, the Workers' Compensation Appeal Board's January 12, 2023 order is affirmed.


_____
ANNE E. COVEY, Judge